Robert BUCHANAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 78A01–0806–CR–284.

Court of Appeals of Indiana.

Jan. 23, 2009.

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ann L. Goodwin, Special Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Following a bench trial, Robert Buchanan appeals his convictions for class B felony robbery, three counts of class B felony criminal confinement, three counts of class C felony intimidation, two counts of class D felony false reporting, and class D felony theft. Buchanan also challenges the appropriateness of his twenty-year sentence. We affirm his robbery conviction and sentence and vacate the remaining convictions on double jeopardy grounds.

### Issues

I. Was Buchanan in custody for *Miranda* purposes when police officers interrogated him at his home?

II. Do Buchanan's convictions violate double jeopardy principles?

III. Is Buchanan's sentence inappropriate?

### Facts and Procedural History

The relevant facts are undisputed. On the morning of January 18, 2007, Buchanan drove his Jeep Cherokee from his Vevay home to Warsaw, Kentucky, and used a pay phone to call in false bomb threats to Indiana's Switzerland County High School and Jefferson–Craig Elementary School. Both schools were evacuated. Buchanan returned home and drove a red Ford Tempo that he had covered with black plastic and tape to the Mainsource Bank in East Enterprise, Indiana. Wearing a ski mask and brandishing a twelve-gauge shotgun, Buchanan entered the bank and ordered the three employees to put money in a duffel bag. The employees retrieved $37,851 in cash from the vault and placed it in the bag. Buchanan told the employees that he knew where they and their families lived and that if they told anyone he would "come back and hurt them." Tr. at 323. Buchanan ordered the employees to lie on the floor and left the bank. Bu-

chanan drove the car into a barn near his home, removed the black plastic and tape, and changed clothes. He then drove home and removed tape residue from the car. He also burned the duffel bag, clothes, plastic, and tape, and hid the stolen money.

Police traced the source of the bomb threats to the Warsaw payphone and identified Buchanan's Jeep Cherokee from security camera footage of the area. Sometime after dark on January 19, 2007, Indiana State Police Detectives Mike Black and Thomas Baxter went to Buchanan's home to investigate the bomb threats. The detectives parked their unmarked cars in Buchanan's driveway and walked toward the back door. Neither detective was in uniform, and neither was visibly armed. Buchanan exited the house and greeted them in the yard. Buchanan knew Detective Baxter, who introduced him to Detective Black. The three men entered Buchanan's mud room. Detective Baxter said that he wanted to talk to Buchanan. Buchanan agreed to do so. Detective Baxter offered Buchanan "a seat in [his] car for privacy[.]" *Id.* at 98. Buchanan put on his shoes, walked outside, opened the door of Detective Baxter's car, and sat in the front passenger's seat. Detective Black sat behind him, and Detective Baxter sat in the driver's seat.

Detective Baxter told Buchanan that he was not under arrest and that he just wanted to talk to him. Buchanan "said that he understood that and that was fine." *Id.* at 100. Detective Baxter also told Buchanan that he was free to leave the car at any time. Buchanan "seemed not to have any trouble understanding that." *Id.* The detectives talked with Buchanan for approximately thirty minutes. During that time, Detective Baxter took a taped statement from Buchanan, who admitted to making the bomb threats. Buchanan said that he had made the threats so that

his daughter could be dismissed from school and spend time with him. Unprompted, Buchanan said that he was not involved in the bank robbery.

After Buchanan gave his statement, the detectives asked if they could inspect the vehicles on his property. Buchanan assented and showed them his vehicles. The detectives saw the Jeep Cherokee involved in the bomb threats but did not see a vehicle that matched the description of the car involved in the bank robbery. Thereafter, the detectives left the property.

Around noon the next day, Detective Baxter and Detective Stan Tressler went to Buchanan's home in Detective Baxter's unmarked car. Neither detective was in uniform, and neither was visibly armed. The detectives parked in Buchanan's driveway. Buchanan emerged from his barn and met them in the yard. Detective Baxter told Buchanan that he "wanted to talk a little bit more and would that be okay." *Id.* at 114. Buchanan said, "Sure." *Id.* Detective Baxter suggested that they talk in his car, and Buchanan "said that would be fine." *Id.* at 115. Buchanan sat in the front passenger's seat, Detective Tressler sat behind him, and Detective Baxter sat in the driver's seat.

Detective Baxter told Buchanan that he was not under arrest, and Buchanan said that he understood. Detective Baxter also told Buchanan that he was free to leave. Detective Baxter broached the subject of Buchanan's denial of involvement in the bank robbery. At that point, members of Buchanan's family arrived on the property, and Detective Tressler exited the car to talk with them. Buchanan asked Detective Baxter, "[I]f I did do this, would you take me to jail, what would I be charged with?" *Id.* at 118. Detective Baxter replied that if Buchanan confessed to the robbery, he would be arrested and charged with various felonies. Eventually, Buchan-

an sighed and said, "I want to talk to my family and then I will tell you what you want to know." *Id.* at 119.

Detective Baxter and Buchanan exited the car. Buchanan walked toward his family members, who were waiting in his barn about a hundred feet away. Buchanan spoke with them and returned to the car. Detective Baxter offered to continue the conversation in the car. Buchanan replied, "[L]et's just go in the house and [sit] at the table." *Id.* at 121. Buchanan invited the detectives inside and offered them something to drink. The detectives and Buchanan sat in the kitchen, and his family sat in an adjoining room. Detective Baxter recorded his conversation with Buchanan, who acknowledged that he was not under arrest and that his statements were voluntary. Buchanan said, "Hopefully me cooperating with you ought to give me good consideration ... [f]or my mistakes." *Id.* at 311. He gave a detailed account of the bomb threats and the robbery and once again acknowledged that his statements were voluntary. He executed a consent for a search of his property, which yielded the stolen money, the shotgun used in the robbery, and other evidence of the crimes.

The State charged Buchanan with the following eleven counts: class B felony robbery, three counts of class B felony criminal confinement, three counts of class C felony intimidation, three counts of class D felony false reporting, and class D felony theft. Buchanan filed a motion to suppress his statements to the detectives and any evidence obtained as a result thereof. The trial court denied Buchanan's motion, and this Court denied Buchanan's request for an interlocutory appeal.

Buchanan waived his right to a jury trial. Before trial, the court granted the State's motion to dismiss one of the false informing counts. On March 7, 2008, the court found Buchanan guilty as charged. The court entered judgment of conviction and imposed concurrent maximum sentences on all counts, for an aggregate term of twenty years.

## Discussion and Decision

### I. Custodial Interrogation

In *Miranda v. Arizona,* the U.S. Supreme Court held that when a law enforcement officer questions a person who has been "taken into custody or otherwise deprived of his freedom of action in any significant way," the person must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). During their two encounters with Buchanan, the detectives did not advise him of these rights before they questioned him.

■ Generally, statements elicited in violation of *Miranda* are inadmissible in a criminal trial. *King v. State,* 844 N.E.2d 92, 96 (Ind.Ct.App.2005). Buchanan sought to exclude his statements to the detectives and evidence obtained as a result thereof on the basis that the statements were obtained in violation of his *Miranda* rights. The trial court admitted the statements and the evidence over Buchanan's objections. Buchanan claims that the trial court erred in doing so. Our standard of review is well settled:

> The admission of evidence is within the broad discretion of the trial court. Accordingly, we will reverse a trial court's ruling on the admissibility of evidence only if the trial court abused its discretion. An abuse of discretion will be found if the decision is clearly against the logic and effect of the facts and circumstances before the court.

*Pearson v. State,* 870 N.E.2d 1061, 1064 (Ind.Ct.App.2007) (citations omitted), *trans. denied.*

 A law enforcement officer's duty to give *Miranda* warnings does not attach unless a defendant has been subjected to custodial interrogation. *King,* 844 N.E.2d at 96. It is undisputed that Buchanan was subjected to interrogation; the issue is whether Buchanan was in custody when he gave his statements.[1] In *Payne v. State,* we explained that

> *Miranda* warnings apply only to custodial interrogation because they are meant to overcome the inherently coercive and police dominated atmosphere of custodial interrogation. To be in custody for purposes of *Miranda,* the defendant need not be placed under formal arrest. Rather, the custody determination turns upon whether the individual's freedom has been deprived in a significant way or if a reasonable person in his position would believe he is not free to leave. As such, the determination involves an examination of all the objective circumstances surrounding the interrogation.[2]

Further, an officer's knowledge and beliefs are only relevant to the question of custody if conveyed through either words or actions to the individual being questioned. Similarly, a police officer's unarticulated plan has no bearing on the question of custody. The test is how a reasonable person in the suspect's shoes would understand the situation.

854 N.E.2d 7, 13 (Ind.Ct.App.2006) (citations omitted). "If a person is unrestrained and has no reason to believe [he] cannot leave, [he] is not in custody." *McIntosh v. State,* 829 N.E.2d 531, 537 (Ind.Ct.App.2005), *trans. denied.*

 Here, both interrogations occurred on Buchanan's property. On both occasions, the detectives were in plain clothes and unmarked vehicles, were not visibly armed, did not restrict Buchanan's freedom of movement, and did not use threatening language or gestures. During the first encounter, Buchanan agreed to talk to the detectives in the privacy of Detective Baxter's car and entered the vehicle without any prodding. Detective Baxter told Buchanan that he was not under arrest and that he was free to leave at any time. Buchanan indicated that he understood

---

1. "Under *Miranda,* 'interrogation' includes express questioning and words or actions on the part of the police that the police know are reasonably likely to elicit an incriminating response from the suspect." *White v. State,* 772 N.E.2d 408, 412 (Ind.2002). Notwithstanding the State's concession below that he was subjected to interrogation, *see* Tr. at 44, Buchanan relitigates the issue extensively on appeal. *See, e.g.,* Appellant's Br. at 10 ("Because Mr. Buchanan was a suspect for [the bomb threats], the purpose of this conversation was obviously for the officers to determine if Mr. Buchanan was the guilty party. In light of that, the discussion had to be reasonably geared toward having Mr. Buchanan incriminate himself."). The mere fact that Buchanan was a suspect and was subjected to interrogation does not mean that he was in custody for purposes of *Miranda. Cf. Beckwith v. United States,* 425 U.S. 341, 345,

96 S.Ct. 1612, 48 L.Ed.2d 1 (1976) (rejecting notion that principle of *Miranda* "should be extended to cover interrogation in non-custodial circumstances after a police investigation has focused on the suspect.") (citation and quotation marks omitted).

2. Buchanan asserts that "[t]his Court has held that despite [an] officer's testimony about a suspect's freedom to leave, the determining factor is the defendant's subjective belief gleaned from the facts and circumstances of the interrogation." Appellant's Br. at 8. Buchanan's assertion is simply wrong. *See, e.g., Gauvin v. State,* 878 N.E.2d 515, 520 (Ind.Ct. App.2007) ("Whether a person was in custody depends upon objective circumstances, not upon the subjective views of the interrogating officers or the subject being questioned."), *trans. denied* (2008).

this.[3] The interrogation lasted approximately thirty minutes, during which time Buchanan admitted to making the bomb threats and stated that he was not involved in the bank robbery. He then allowed the detectives to inspect his vehicles, after which they left the property. Based on the totality of these circumstances, we cannot conclude that the detectives deprived Buchanan's freedom in a significant way or that a reasonable person would have believed that he was not free to leave their presence. In other words, Buchanan was not in custody during his first encounter with the detectives, and therefore the detectives were not required to advise him of his *Miranda* rights. As such, the trial court did not abuse its discretion in admitting the statements Buchanan made during this encounter.

■ During the second encounter, Buchanan agreed to talk to the detectives in Detective Baxter's car. Detective Baxter told Buchanan that he was not under arrest and that he was free to leave. After he asked what would happen if he confessed to the bank robbery, Buchanan walked unaccompanied to his barn to talk to his family and then invited the detectives into his home. Buchanan and the detectives sat in the kitchen, and his family sat in an adjoining room. He acknowledged that he was not under arrest and that his statement was voluntary. Buchanan then confessed to the bank robbery.

■ The only compelling argument that Buchanan advances to support his claim that he was in custody during the second encounter is that he had already confessed to the bomb threats and therefore could not reasonably have believed that he was free to leave.[4] Buchanan's argument relies solely on *State v. Linck,* 708 N.E.2d 60 (Ind.Ct.App.1999), *trans. denied.* In that case, officers responding to a complaint of illegal drug use smelled what they believed to be burning marijuana as they climbed the stairs in Linck's apartment building. The officers knocked on Linck's door, and Linck allowed them to enter. The officers noticed that the odor was stronger inside the apartment and informed Linck that they smelled the odor and were responding to a complaint of illegal drug use. When the officers questioned Linck about this, he admitted that he had smoked a joint. Without advising Linck of his *Miranda* rights, the officers asked if he possessed additional marijuana. Linck responded affirmatively and produced two bags of marijuana. He was arrested and charged with possession of marijuana. The trial court granted his motion to suppress.

On appeal, another panel of this Court agreed with both the trial court and Linck "that he was in custody after he admitted smoking the joint because a reasonable

---

**3.** Regarding this encounter, Buchanan states, "When a suspect is interviewed at his home, it begs the question of where the suspect is supposed to go." Appellant's Br. at 8–9. He then briefly mentions two cases in which the defendant was questioned in his bedroom late at night and was found to be in custody for *Miranda* purposes. *See id.* at 9 (citing *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), and *Bond v. State,* 142 Md.App. 219, 788 A.2d 705 (Md.2002)). We first observe that Buchanan was free to leave Detective Baxter's car and equally free to order the detectives to leave the premises.

We further observe that the facts of this case are clearly distinguishable from those of *Orozco* and *Bond,* which we find unpersuasive.

**4.** The State observes that Buchanan did not present this argument to the trial court and contends that he has therefore waived it on appeal. Because we must review the totality of the circumstances—including Buchanan's confession to the bomb threats—to determine whether he was in custody for *Miranda* purposes, we decline to find waiver in this instance.

person would not have felt free to leave following that admission." *Id.* at 63. The panel stated,

> By informing the officers that he had just smoked the marijuana, Linck admitted to engaging in illegal activity, confirming the officers' suspicions and the original complaint. Further, immediately before Linck made this admission, the officers had smelled burning marijuana both in the hallway and in Linck's apartment. At no time did the officers inform Linck that he was free to leave. As a result, we agree with the trial court that a reasonable person would not have felt free to leave. Thus, Linck was in custody for purposes of *Miranda* after he admitted smoking the marijuana. At that point, the officers were required, but failed, to advise Linck of his *Miranda* warnings before they questioned him further. Therefore, any statements made by Linck after he admitted smoking the marijuana, should have been suppressed.

*Id.* (footnote omitted).

The facts of this case compel a different result. If Buchanan had confessed to the bank robbery immediately after he confessed to the bomb threats, or if his freedom of movement had been restricted during or after the first encounter with the detectives, then we might find *Linck* more persuasive. As noted above, however, Buchanan denied any involvement in the robbery during the first encounter, and his freedom of movement was not restricted in any way. At the beginning of the second encounter, Detective Baxter specifically told Buchanan that he was not under arrest and was free to leave. Once again, Buchanan's freedom of movement was not restricted in any way; indeed, he walked unaccompanied to his barn to talk to his family and then invited the detectives into his kitchen and offered them something to drink. Consequently, we believe that this case is factually distinguishable from *Linck* and that Buchanan's confession to the bomb threats during his first encounter with the detectives is not dispositive as to whether he was in custody for *Miranda* purposes during the second encounter.[5] Based on the totality of the circumstances, we conclude that Buchanan was not in custody during his second encounter with the detectives, and therefore the detectives were not required to advise him of his *Miranda* rights.[6] As such, the trial court did not abuse its discretion in admitting the statements Buchanan made during this encounter. Likewise, the trial court did not abuse its discretion in admitting evidence obtained as a result of his statements.[7]

---

**5.** *Cf. Ackerman v. State,* 774 N.E.2d 970, 978–79 (Ind.Ct.App.2002) ("We do not consider Ackerman's admissions [to drinking alcohol, driving, and leaving the scene of a one-car accident] to be as damning as Linck's, and we certainly do not consider them to be dispositive as to custody, as the *Linck* court apparently considered Linck's to be. Linck's and Ackerman's admissions are easily distinguished in that while smoking marijuana is always illegal, leaving the scene of an accident and drinking and driving are not. However, we do consider the admissions relevant to the question of custody, as a reasonable person would be aware that admitting to leaving the scene of an accident and drinking and driving could very well be an admission of potentially illegal activity."), *trans. denied* (2003).

**6.** That said, we are incredulous that experienced state police detectives would jeopardize the prosecution of a bank robbery suspect by not advising him of his *Miranda* rights.

**7.** Buchanan's argument that the trial court abused its discretion in admitting this evidence is premised solely on a "fruit of the poisonous tree" theory. *See Hanna v. State,* 726 N.E.2d 384, 389 (Ind.Ct.App.2000) ("The 'fruit of the poisonous tree' doctrine is one facet of the exclusionary rule of evidence

## II. Double Jeopardy

■ Next, Buchanan claims that his numerous convictions violate double jeopardy principles. He first contends, and the State properly concedes in its appellee's brief, that his theft conviction must be vacated because theft is a lesser included offense of robbery.[8] *See* Ind.Code § 35–38–1–6 ("Whenever: (1) a defendant is charged with an offense and an included offense in separate counts; and (2) the defendant is found guilty of both counts; judgment and sentence may not be entered against the defendant for the included offense."); *Johnson v. State*, 749 N.E.2d 1103, 1109 (Ind.2001) ("Theft is an inherently included lesser offense of robbery. One cannot commit robbery without also committing theft."). Accordingly, we vacate Buchanan's theft conviction.

■ Buchanan also contends, and the State conceded at the sentencing hearing, that his false reporting and intimidation convictions must be vacated.[9] . Tr. at 260. Buchanan offers several rationales, the most persuasive of which is the continuing crime doctrine:

The continuing crime doctrine essentially provides that actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction. [T]he continuous crime doctrine does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes; rather, the doctrine defines those instances where a defendant's conduct amounts only to a single chargeable crime. In doing so, the continuous crime doctrine prevents the State from charging a defendant twice for the same continuous offense.

*Riehle v. State*, 823 N.E.2d 287, 296 (Ind. Ct.App.2005) (citations omitted), *trans. denied.* Here, the record indicates that Buchanan phoned in false bomb threats as a diversionary tactic to facilitate his robbery of the bank, during which he used his shotgun to intimidate the bank's employees into giving him the money in the vault. We conclude that these crimes were "so compressed in terms of time, place, singleness of purpose, and continuity of action as

---

which bars the admissibility in a criminal proceeding of evidence obtained in the course of unlawful searches and seizures. When applied, the doctrine operates to bar not only evidence directly obtained, but also evidence derivatively gained as a result of information learned or leads obtained during an unlawful search or seizure." (citations omitted). Given that his statements were lawfully obtained, Buchanan's argument must fail.

8. *See* Ind.Code § 35–43–4–2(a) ("A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony."); Ind.Code § 35–42–5–1 ("A person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits

robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon....").

9. *See* Ind.Code § 35–44–2–2(c) ("A person who reports, by telephone, telegraph, mail, or other written or oral communication, that: (1) the person or another person has placed or intends to place an explosive, a destructive device, or other destructive substance in a building or transportation facility ... knowing the report to be false commits false reporting, a Class D felony."); Ind.Code § 35–45–2–1("(a) A person who communicates a threat to another person, with the intent: (1) that the other person engage in conduct against the other person's will ... commits intimidation, a Class A misdemeanor. (b) However, the offense is a ... (2) Class C felony if, while committing it, the person draws or uses a deadly weapon.").

to constitute a single transaction" and therefore vacate Buchanan's false reporting and intimidation convictions. *Id.*

 Finally, Buchanan contends that his criminal confinement convictions must be vacated on double jeopardy grounds.[10] "Generally, double jeopardy does not prohibit convictions for criminal confinement and robbery when the facts indicate that the confinement was more extensive than that necessary to commit the robbery. In these circumstances, criminal confinement is a separate criminal transgression." *Benavides v. State,* 808 N.E.2d 708, 712 (Ind.Ct.App.2004) (citations omitted), *trans. denied.*

The State makes the following argument:

It is clear from the evidence adduced at trial that Buchanan confined his victims beyond that which was necessary to accomplish the robbery. Buchanan first ordered the three bank employees to place all the banks cash in his duffle bag. After they had done that, the robbery was completed. Buchanan then ordered the bank employees to lie down on the ground, an act of confinement that exceeded the scope of the robbery.

Appellee's Br. at 22 (citation to transcript omitted). We disagree. Had Buchanan held the bank employees at gunpoint for hours after they surrendered the cash, or had he locked them in the vault at that point, we might reach a different conclusion. Under the facts of this case, however, we believe that Buchanan's parting command for the bank employees to lie on

the floor did not constitute confinement more extensive than that necessary to commit the robbery. Therefore, we vacate Buchanan's criminal confinement convictions. Consequently, only Buchanan's robbery conviction remains.

### III. Sentencing

 Finally, Buchanan challenges the appropriateness of his twenty-year sentence for his class B felony robbery conviction. Pursuant to Indiana Appellate Rule 7(B), this Court "may revise a sentence authorized by statute if, after due consideration of the trial courts decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden of persuading us that his sentence has met the inappropriateness standard of review. *Anglemyer v. State,* 868 N.E.2d 482, 494 (Ind.2007), *clarified on reh'g,* 875 N.E.2d 218.

 "[R]egarding the nature of the offense, the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Id.* "A person who commits a Class B felony shall be imprisoned for a fixed term of between six (6) and twenty (20) years, with the advisory sentence being ten (10) years." Ind.Code § 35–50–2–5. The record indicates that Buchanan carefully planned the bank robbery. As a diversionary tactic, he called in false bomb threats to two schools, which resulted in the chaotic evacuation of approximately

---

10. *See* Ind.Code § 35–42–3–3("(a) A person who knowingly or intentionally: (1) confines another person without the other person's consent ... commits criminal confinement. Except as provided in subsection (b), the offense of criminal confinement is a Class D felony. (b) The offense of criminal confinement defined in subsection (a) is: ... (2) a Class B felony if it: (A) is committed while armed with a deadly weapon...."). Buchanan also contends that we must vacate his criminal confinement convictions pursuant to the continuing crime doctrine. The State claims that Buchanan waived this argument by failing to file a motion to dismiss. Given our resolution of this issue on double jeopardy grounds, we need not address this issue further.

one thousand students. The masked Buchanan then terrorized three bank employees with a shotgun, stole over $37,000 in cash, drove off in a camouflaged getaway car, and destroyed evidence linking him to the crime. As Buchanan himself concedes, "this is a crime which is difficult to sanitize." Appellant's Br. at 26. Clearly, the nature of the offense supports a sentence substantially in excess of the advisory term.

As for Buchanan's character, the trial court noted that he had conserved financial and judicial resources by waiving his right to a jury trial. Buchanan also points out that while incarcerated, he became a jail trustee and attempted to initiate a library donation program and a GED program. He claims to have been "a hardworking man undone by his divorce and the death of his mother." Appellant's Br. at 28. We note, however, that Buchanan downplays his prior criminal history, which includes several alcohol-related misdemeanor convictions. At the sentencing hearing, Buchanan testified that he drank tequila both before and after the robbery. He blamed his second wife for his alcoholism and gave no indication that he had enrolled in any substance-abuse programs during his incarceration. Buchanan's prior convictions and his unwillingness to accept responsibility for his actions and his alcoholism do not reflect favorably on his character. In sum, Buchanan has failed to persuade us that his twenty-year sentence is inappropriate.

Affirmed in part and vacated in part.

ROBB, J., concurred.

BROWN, J., concurred in part, dissented in part with opinion.

BROWN, Judge concurring in part and dissenting in part.

I concur with most of the majority's analysis but respectfully dissent as to the majority's conclusions that Buchanan was not in custody prior to his confession to the robbery during the second interview with the police, and that Buchanan's false reporting convictions should be vacated.

The Indiana Supreme Court has held that "Miranda warnings are required only in the context of custodial interrogation." *Dye v. State*, 717 N.E.2d 5, 14 (Ind.1999) (citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)), *reh'g denied, cert. denied*, 531 U.S. 957, 121 S.Ct. 379, 148 L.Ed.2d 292 (2000). The relevant inquiry in determining whether a person was in custody is "whether a reasonable person in the accused's circumstances would believe that he or she is free to leave." *Id.* (citing *Cliver v. State*, 666 N.E.2d 59, 66 (Ind. 1996), *reh'g denied*). Here, although the officers assured Buchanan that he was not under arrest and Buchanan agreed that the second statement was voluntary, those factors are not determinative. *See, e.g., McIntosh v. State*, 829 N.E.2d 531, 538 (Ind.Ct.App.2005) (noting that the fact that the police say, "you are free to leave at any time" is not the sole determinative factor of whether a person is in custody), *reh'g denied, trans. denied*. At the time of the second interview, Buchanan had already confessed to making false bomb threats. I do not believe that a reasonable person under those circumstances would have felt free to leave. *See, e.g., Sellmer v. State*, 842 N.E.2d 358, 365 (Ind.2006) (holding that, under the totality of the circumstances, "a reasonable person under the same circumstances as those in which Sellmer found herself would believe either that she was under arrest or, at least, that she was not free to resist the entreaties of the police"); *State v. Linck*, 708 N.E.2d 60 (Ind.Ct.App.1999) (holding that, once the defendant admitted to smoking marijuana,

he was in custody for *Miranda* purposes), *trans. denied.*

Indeed, Buchanan felt that he was not free to leave as reflected in his statements made at the end of his confession on the second day. Buchanan said:

> I, I mean when you come [sic] to my house last night, you had me dead to rights making the call. You had your suspicions about the bank robbery then. I said I didn't do it and I just couldn't see any way you guys could possibly find that out. But in the state of paranoia um you showing up today right when, you know, the boy is picking up the Sea Do [sic] and that kind of stuff. *It just, you guys caught me a little off guard and there's gonna be no way that we was gonna come to any kind of arrangements today other than you guys just taking me to jail. Whether I confessed or not.* And when you said that big sigh of relief, yes it is. I just hope that everyone can kind of forgive me for doing something that I thought that I had do [sic] for necessity.

Exhibits at 346 (emphasis added). The dispositive question is whether a reasonable person in Buchanan's position would have felt free to leave prior to making his confession. Clearly Buchanan felt that he was not, making his confession inadmissible without the proper Miranda warnings.

Further, I disagree with the majority's conclusion that the continuing crime doctrine applies to the false reporting convictions. "The continuing crime doctrine essentially provides that actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Riehle v. State,* 823 N.E.2d 287, 296 (Ind.Ct.App. 2005), *trans. denied.* "[T]he continuous crime doctrine prevents the State from charging a defendant twice for the same continuous offense." *Id.* Buchanan phoned in the false bomb threats, went to several stores to buy tape, returned to his home to finish covering his car, took a drive in a different vehicle, returned home to change clothes and retrieve his gun, and drove to the bank in his covered vehicle. I conclude that the false reporting and bank robbery offenses were not so compressed in terms of time, place, singleness of purpose and continuity of action as to constitute a single transaction. Consequently, I do not believe that the false reporting convictions should be vacated. *See, e.g., Firestone v. State,* 838 N.E.2d 468, 472 (Ind.Ct.App.2005) (holding that the defendant's convictions for rape and criminal deviate conduct did not fall within the continuing crime doctrine).

For these reasons, I would affirm in part, vacate in part, and remand.