**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 31 2012, 8:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LEANNA WEISSMAN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY STANSBURY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 15A05-1111-CR-585 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

### APPEAL FROM THE DEARBORN SUPERIOR COURT
The Honorable Jonathan N. Cleary, Judge
Cause No. 15D01-1008-FA-2

**May 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

A note of caution. It is never a good idea to willingly pose for pictures while brandishing a weapon. Relevant or not, they always seem to turn up in a courtroom. Anthony Stansbury appeals his convictions, following a jury trial, for class B felony attempted robbery and class B felony aggravated battery. The jury also found Stansbury to be a habitual offender. During trial, three poster-size photographs of Stansbury brandishing a handgun were admitted into evidence without objection. On appeal, Stansbury contends that the admission of these photographs constituted fundamental error due to the prejudicial impact on the jury. Stansbury also contends that his crimes of attempted robbery and aggravated battery occurred so close in time, place, and objective, so as to render them one continuous crime for double jeopardy purposes. Finding no fundamental error and no double jeopardy violation, we affirm Stansbury's convictions. However, the State directs us to an error in the sentencing order regarding the habitual offender sentence enhancement which necessitates that we remand for correction of the sentencing order.

**Facts and Procedural History**

The facts most favorable to the convictions indicate that, in August of 2010, Stansbury, an Ohio resident, and Perry James Peak conspired to rob Steve Chaulk of his money. Chaulk was a longtime friend of Peak's father and, it was well known to Peak that Chaulk regularly carried large sums of cash on his person. Tr. at 693.

On August 11, 2010, Peak traveled to Stansbury's residence in Ohio to obtain Stansbury's .22 caliber handgun to bring to Indiana for use in the robbery. Peak brought the

2

gun to Indiana because Stansbury did not want to get caught traveling over the state line with the handgun. That morning, Stansbury sent the following text message to another individual: "I need you to watch the kids for an hour … I need to hit this lick today." *Id*. at 693. Stansbury and his girlfriend, Erica King, drove from Ohio to a church parking lot near Peak's residence. Peak picked up Stansbury and King and drove them back to Peak's house. King contacted an acquaintance, Kelley Buchert, and arranged for Buchert to pick up Stansbury and King along a roadside after they "hit a lick." *Id*. at 419-20. The plan was for Peak to lure Chaulk to Peak's house so that Stansbury and King could rob Chaulk. After Chaulk was robbed, Peak was going to come out of his house and fake having also been robbed himself while Stansbury and King ran through the woods and a cornfield before being picked up by Buchert.

At approximately 6:00 p.m., Chaulk arrived at Peak's house and honked the horn of his truck. Wearing ski masks over their faces, Stansbury and King approached the truck. Stansbury put a handgun to Chaulk's head and said, "Give me your money or I'll shoot ya. Give me your money or I'll kill ya." *Id*. at 281. Chaulk refused, stating, "I ain't givin you nothing." *Id*. at 282. Stansbury hit Chaulk in the eye with his other hand and again put the gun to Chaulk's head and demanded money. Chaulk refused.

Stansbury reached inside Chaulk's truck, turned off the ignition and took the keys. Chaulk said, "I'm gonna kick the sh** out of ya." *Id*. at 282. Chaulk threw open the truck door and exited the vehicle. Stansbury then took off running.

At that point, Chaulk decided to do "the ole Snagglepuss, exit stage left" and started running across the yard to the neighbors' house. *Id.* at 283. Stansbury turned and chased Chaulk yelling, "You don't stop[,] I'm going to shoot ya." *Id.* Chaulk responded, "Shoot me, son of a bitch." *Id.* As the two men ran, Stansbury fired the gun at Chaulk. The bullet grazed Chaulk's side, entering and exiting through his jeans. Although injured, Chaulk continued running to the neighbors' house and eventually summoned the police.

When Peak heard the shot, he called Buchert and told her to "go now" to pick up Stansbury and King. *Id.* at 423. Buchert picked up Stansbury and King on the side of the road after they ran out of a cornfield. Buchert saw Stansbury put down a gun before they drove away. *Id.* at 425. Police never recovered the weapon used during the crimes.

On August 18, 2010, the State charged Stansbury with class A felony attempted murder and class B felony attempted robbery. The State additionally charged Stansbury with being a habitual offender on September 29, 2010. Following a jury trial held on September 12, 2011, the jury found Stansbury not guilty of attempted murder but guilty of the lesser included offense of class B felony aggravated battery. The jury also found Stansbury guilty of class B felony attempted robbery and of being a habitual offender. The court sentenced Stansbury to concurrent sentences of twenty years for each class B felony and also entered a separate consecutive sentence of thirty years for the habitual offender finding. This appeal ensued.

**Discussion and Decision**

*I. Admission of Photographs*

Stansbury first contends that the trial court abused its discretion in admitting into evidence three poster-size photographs of him brandishing a handgun, the weapon identified by witnesses as the same weapon used during his crimes. Specifically, Stansbury asserts that the prejudicial impact of this evidence substantially outweighed its probative value.

We begin by noting that Stansbury objected to the photographs on relevancy and prejudice grounds when the State initially began to lay a foundation for the admission of the photographs during Chaulk's testimony. Tr. at 292. Because the State was merely laying a foundation for the relevance of the photographs and not offering them for admission, the trial court overruled Stansbury's objection. *Id.* Stansbury did not object when the photographs were eventually offered and admitted into evidence during Peak's testimony. *Id.* at 489. Indeed, when specifically asked if he had any objection to the admission of the three photographs, Stansbury's counsel replied, "No, Your Honor." *Id.* It is well settled that a contemporaneous objection at the time the evidence is introduced at trial is required to preserve an issue for appeal. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010).[1] The failure to make a contemporaneous objection, so as to provide the trial court an opportunity to make

---

[1] We further note that Indiana recognizes "continuing objections" as a way to avoid the futility and waste of time inherent in requiring repetition of the same unsuccessful objection each time a party offers evidence of a given character. *Hayworth v. State*, 904 N.E.2d 684, 692 (Ind. Ct. App. 2009). However, the decision whether to grant a continuing objection is within the trial court's discretion, and if "the trial court does not specifically grant the right to a continuing objection, it is counsel's duty to object to the evidence as it is offered in order to preserve the issue for appeal." *Id.* Stansbury did not request that his initial objection constitute a continuing objection, and, as stated, Stansbury did not object to the evidence when it was offered.

a final ruling on the matter in the context in which the evidence is introduced, results in waiver of the error. *Brown v. State*, 783 N.E.2d 1121, 1125-26 (Ind. 2003). Consequently, Stansbury has waived appellate review of his claim of error.

However, a claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that fundamental error occurred. *Brown*, 929 N.E.2d at 207. The fundamental error exception to the contemporaneous objection rule is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant of fundamental due process." *Id*.

Stansbury claims that the admission of the photographs constituted fundamental error because the prejudicial impact of the evidence substantially outweighed the probative value. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. Still, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice…." Ind. Evidence Rule 403.

Because Chaulk could not identify his masked assailant and the handgun used by the assailant was never recovered, the central issues in this case were Stansbury's identity as the attempted robber and his possession of the gun used during the crimes. Peak testified that Stansbury gave him a handgun to transport from Ohio to Indiana in order to rob Chaulk. The State asked Peak if the handgun held by Stansbury in each of the photographs, which were

taken approximately sixteen months prior to the attempted robbery, was the same weapon Stansbury gave to Peak to bring to Indiana and the same gun that Stansbury used during the attempted robbery and aggravated battery. Peak identified the handgun pictured as the same gun that he transported to Indiana and the same gun that Stansbury used during the crimes. Accordingly, the photographs were admitted into evidence for their tendency to establish Stansbury's possession of the weapon used in the crimes.

Stansbury directs us to cases in which our supreme court has stated, "'[t]he fact that a person has in his possession the same instrumentality as that used in a crime has only the slightest tendency to support an inference that the person committed the crime. That is especially so where possession of the instrumentality is remote in time from the date the crime occurred.'" *Wilson v. State*, 770 N.E.2d 799, 802 (Ind. 2002) (quoting *Pope v. State*, 737 N.E.2d 374, 378 (Ind. 2000)). We agree with Stansbury that, due to the remoteness in time between the photographs and the crimes here, photographs evidencing Stansbury's prior possession of the gun used during the crimes, standing alone, might have minimal relevance to establish his identity as Chaulk's assailant. We also recognize that the photographs do not depict Stansbury in the most flattering light.

Nevertheless, under the facts of this case, the photographs are relevant and Stansbury has not shown that he was subjected to unfair prejudice. Stansbury's three co-conspirators, Peak, King, and Buchert, all testified and identified Stansbury as the attempted robber. Although police were unable to recover the weapon used during the crimes, Peak identified the weapon possessed by Stansbury in the photographs as the same weapon possessed by

Stansbury just prior to and during the crimes. Chaulk also identified the handgun in the photographs as appearing the same as the one used against him. Accordingly, the photographs were relevant to identify the weapon possessed and used by Stansbury in committing his crimes. While all relevant evidence in a criminal proceeding is inherently prejudicial, the inquiry is whether the evidence is unfairly prejudicial. *See State v. Seabrooks*, 803 N.E.2d 1190, 1193-94 (Ind. Ct. App. 2004). Despite Stansbury's contention that the "gun wielding" pictures are prejudicial, he has not established that they are unfairly so. Appellant's Reply Br. at 5. We cannot say that any error occurred, much less fundamental error.

## II. *Continuing Crime Doctrine*

We next address Stansbury's contention that his crimes of attempted robbery and aggravated battery occurred so close in time, place, and objective, so as to render them one continuous crime for double jeopardy purposes. The continuing crime doctrine reflects a category of Indiana's prohibition against double jeopardy. *Walker v. State*, 932 N.E.2d 733, 736 (Ind. Ct. App. 2010). The doctrine provides that actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction. *Id*. The continuing crime doctrine does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes; rather, the doctrine defines those instances where a defendant's conduct amounts only to a single chargeable crime. *Riehle v. State*, 823 N.E.2d 287, 296 (Ind. Ct. App. 2005), *trans. denied*. The continuing crime doctrine does not apply to factual

8

situations where a defendant is charged with two or more distinct chargeable crimes. *Walker*, 932 N.E.2d at 737.

Here, the continuing crime doctrine does not apply to Stansbury's two distinct crimes. First, Stansbury committed attempted robbery when he approached Chaulk's truck, pointed a gun in his face, and demanded money from him. When Chaulk refused, Stansbury punched Chaulk and again demanded money. Chaulk again refused. After Stansbury reached inside Chaulk's truck and took Chaulk's keys, Chaulk became angry and exited the vehicle. Stansbury took off running. At this point, the attempted robbery ended. After Chaulk began running in the other direction toward a neighbors' property, Stansbury turned and began chasing Chaulk, yelling that he was going to shoot him and kill him. Stansbury then committed aggravated battery when he fired his gun and shot Chaulk, the bullet grazing the side of Chaulk's body. Each of Stansbury's crimes was a distinct criminal act. The continuity of Stansbury's actions does not negate the fact that these were different criminal acts with different criminal purposes.[2] Stansbury has not established a double jeopardy violation pursuant to the continuing crime doctrine.

---

[2] Stansbury points to our opinion in *Buchanan v. State*, 913 N.E.2d 712 (Ind. Ct. App. 2009), *trans. denied*, to support his proposition that two distinct crimes in the same "crime spree" can still violate the continuing crime doctrine. Appellant's Reply Br. at 6. However, *Buchanan* is factually inapposite. The defendant in *Buchanan* phoned in false bomb threats to two schools as a diversionary tactic to facilitate his robbery of a bank, during which he used his shotgun to intimidate the bank's employees into giving him money in the vault. Accordingly, we held that the defendant's acts of false reporting and intimidation were all part of his continuing crime of robbery, as they were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Id* at 721-22. Unlike the offenses in *Buchanan*, Stansbury's crimes did not constitute a single transaction, but rather consisted of separate criminal acts with different criminal purposes.

### *III. Sentencing*

Although we affirm Stansbury's convictions, the State has directed us to a sentencing error by the trial court. In its sentencing order, the trial court erroneously entered a separate thirty-year sentence for the habitual offender finding to be served consecutive to the concurrent sentences for class B felony attempted robbery and class B felony aggravated battery. It is well settled that a habitual offender finding does not constitute a separate crime, nor does it result in a separate sentence. *See* Ind. Code §35-50-2-8. Rather, a habitual offender finding results in a sentence enhancement imposed upon the conviction of a subsequent felony. *Hendrix v. State*, 759 N.E.2d 1045, 1048 (Ind. 2001). Accordingly, we affirm Stansbury's convictions but remand with instructions to the trial court to correct the sentencing order by attaching the habitual offender enhancement to one of the underlying class B felonies.

Affirmed and remanded.

FRIEDLANDER, J., and BARNES, J., concur.