**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana



FILED
Jun 05 2013, 9:01 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSHUA SCHULKERS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 15A05-1210-CR-497 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DEARBORN SUPERIOR COURT
The Honorable Sally Blankenship, Judge
Cause No. 15D02-1110-FB-042

**June 5, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

After a jury trial, Joshua Schulkers was convicted of aggravated battery, a Class B felony, two counts of neglect of a dependent, both Class B felonies, battery resulting in serious bodily injury on a child less than fourteen, a Class B felony, neglect of a dependent, a Class C felony, and battery resulting in bodily injury on a child less than fourteen, a Class D felony. He now appeals his convictions, raising two issues for our review: 1) whether the trial court erred in excluding certain evidence during his trial, and 2) whether his convictions violate principles of double jeopardy. Concluding there was a double jeopardy violation with regard to only two of the counts and there was no abuse of discretion in the exclusion of evidence, we affirm in part, reverse in part, and remand.

## Facts and Procedural History

The facts most favorable to the jury's verdicts reveal that in 2011, Schulkers and Ashley Dilbeck lived together in a garage apartment owned by Dilbeck's grandmother, Rosie Moore. On August 11, 2011, their daughter, D.S., was born. On October 2, 2011, Dilbeck left a then seven-week old D.S. in the care of Schulkers for the first time when she went to work. Prior to this date, Dilbeck left D.S. with Moore if she needed a babysitter. However, the day before, she had told Schulkers to "man up" and start taking responsibility for their daughter. Transcript at 319-20. While Dilbeck was at work, Moore heard D.S. crying. She knocked on the door of the apartment and Schulkers opened it and said he was changing D.S.'s diaper and then shut the door in Moore's face. Moore heard a loud thump and D.S. stopped crying. Moore then called Dilbeck at work and told her to come home or she might call the police. Dilbeck refused to come home and hung up. Moore then called Dilbeck's mother, who lived in Florida, and she

2

suggested standing outside the air conditioning vent to see if she could hear any sounds. Moore did that and saw Schulkers through the glass looking "like a wild person." Id. at 153. Moore then called her other daughter, Dilbeck's aunt, Bonnie. Bonnie came over and Schulkers let her inside the apartment. D.S. was covered in blankets and appeared to be sleeping. Bonnie did not pick her up because she did not want to wake her.

Dilbeck returned home from work that night at around 1:00 am. Schulkers told Dilbeck that D.S. had bumped her head on the changing table but that she was fine and sleeping. When Dilbeck saw D.S., she had her eyes open and was moaning. Dilbeck picked her up and when the blankets fell away, Dilbeck saw a bump on D.S.'s head. She took her to the hospital. After D.S. was transferred to Children's Hospital in Cincinnati, Ohio, it was discovered that she had a skull fracture, bleeding on the brain, rib fractures (six new and one old), and a liver laceration. D.S.'s upper frenulum (a flap of skin in the mouth) was also torn but it was healing and Dilbeck reported that this was an older injury that she sought treatment for and was assured would heal.

Schulkers was charged with aggravated battery, two counts of neglect of dependent, and battery resulting in serious bodily injury on a child less than fourteen years of age, all Class B felonies, stemming out of the skull fracture, new rib fractures, and liver laceration, allegedly occurring between October 2 and 3. He was also charged with neglect of a dependent and battery resulting in serious bodily injury on a child less than fourteen years of age as Class B felonies, stemming from the old rib fracture, which allegedly occurred between August 11 and October 2.

Prior to trial, the State filed a motion in limine to preclude Schulkers from presenting, without first approaching the bench, any evidence with regard to the CHINS

3

proceedings that followed the criminal charges in this case or Dilbeck's voluntary relinquishment of her parental rights to D.S. The trial court granted the motion. During trial, Schulkers attempted to present evidence of Dilbeck's voluntary relinquishment, but the trial court consistently disallowed this evidence, at one point stating:

> you have not provided to the Court, a reason that the Court should allow at this time the question in regards to her actions after um, this incident as to termination of parental rights; not show any nexis [sic] to this situation, um, and it is outside the scope of direct examination.

Id. at 359. During the jury trial, the State relied upon the expert testimony of Drs. Makoroff and Keeshin. Dr. Makoroff testified that in her opinion, the injuries were "definitely" the result of child abuse, id. at 221, the head and liver injuries were life-threatening, and the injuries could have caused "a lot of pain," id. at 246. Both Drs. Makoroff and Keeshin testified that liver lacerations are usually a result of blunt force trauma to the abdomen and that none of the history provided by Schulkers could account for the injuries. The State also entered into evidence several interviews during which Schulkers made incriminating statements but did not confess.

The jury found Schulkers guilty of the first four counts as charged. With regard to the charges stemming from the old rib injury, the jury found him guilty of the lesser included offenses of neglect of a dependent as a Class C felony and battery resulting in bodily injury as a Class D felony. The trial court convicted and sentenced Schulkers accordingly, giving him the maximum sentence allowed under the law, forty-eight years executed. Schulkers now appeals. Additional facts will be provided as necessary.

4

## Discussion and Decision

### I. Admissibility of Evidence

#### A. Standard of Review

A trial court has broad discretion in ruling on the admissibility of evidence. Packer v. State, 800 N.E.2d 574, 578 (Ind. Ct. App. 2003), trans. denied. We will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. Id. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Id.

#### B. Excluded Evidence

Schulkers argues on appeal that the trial court violated his constitutional right of confrontation and abused its discretion by excluding evidence that Dilbeck voluntarily relinquished her parental rights to D.S. He argues that this evidence was relevant to his theory that Dilbeck was the one who abused D.S. He also argues that this was relevant to show motive on the part of Dilbeck and her family to falsely accuse him of hurting D.S. to pave the way for her adoption by Dilbeck's mother.

Evidence which is not relevant is not admissible. Ind. Evidence Rule 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. We agree with the State that evidence of Dilbeck's later relinquishment of her parental rights was not relevant to the issue of Schulkers's guilt. While Schulkers was free to argue in his own defense that Dilbeck had been the one to hurt D.S., her relinquishment of her parental rights—which

5

took place after she sought treatment for D.S.'s injuries—made it no more or less probable that this was true.

And while evidence of bias, prejudice, or ulterior motives on the part of a witness is relevant at trial because it may discredit the witness or affect the weight of the witness's testimony, Zawacki v. State, 753 N.E.2d 100, 102 (Ind. Ct. App. 2001), trans. denied, "[i]t is not reversible error to disallow cross-examination for bias and prejudice if the line of questioning would not give rise to a reasonable degree of probability of bias and prejudice," Hossman v. State, 467 N.E.2d 416, 417 (Ind. 1984), cert. denied, 469 U.S. 1195 (1985). Here, the evidence indicated that Dilbeck took D.S. to the hospital upon arriving home from work and discovering her head injury despite Schulkers's insistence that she was fine. Thus, the trial court was within its discretion in finding that there was no nexus between Dilbeck's alleged motive to falsely accuse Schulkers and her later relinquishment of her parental rights. See id. (finding that the trial court was within its discretion "in finding that there was no, or at best remote, nexus connecting the excluded evidence and the conclusion of bias"). And to the extent Schulkers relies on the case of Zawacki, 753 N.E.2d at 100, that reliance is misplaced. In that case, the issue was whether the excluded evidence fell within the confines of the Rape Shield Law, which prohibits evidence of a victim's past sexual conduct in a prosecution for a sex crime. Id. at 102-03. Moreover, while the majority opinion concluded that the evidence was not properly excluded under the Rape Shield Law and should have been admitted to show bias on the part of the victim, that evidence was in the form of letters written by the victim prior to the incident of alleged sexual misconduct, id. at 103, which is unlike the

6

facts here, where the relinquishment of parental rights took place after Dilbeck sought treatment for D.S.'s injuries.

Moreover, we note that short of admitting into evidence Dilbeck's later relinquishment of her parental rights, Schulkers had sufficient opportunity to cross-examine the witnesses regarding the family's desire to care for D.S., Dilbeck's alleged lack of love for her child, and any reasons they may have had to falsely accuse Schulkers. Indeed, during trial, Schulkers attempted to paint Dilbeck as an unconcerned mother by asking both Moore and Dilbeck several questions in cross-examination about Dilbeck's reaction—or alleged lack thereof—to her grandmother's phone call on October 2nd. He also asked Dilbeck questions regarding her interview with an investigator shortly after D.S.'s injuries were discovered during which she appeared to indicate that she believed Schulkers's story that D.S.'s head injury had taken place accidentally during a diaper change. Schulkers also asked the investigator who testified why he did not consider Dilbeck a suspect in the case. There was also evidence presented to the jury that Dilbeck's grandmother was biased against Schulkers. Moore testified that she did not "trust [Schulkers] with that baby," tr. at 151, and Dilbeck testified that her grandmother "was acting mad because didn't want her left with him. She wanted to watch her," id. at 348. See Beaty v. State, 856 N.E.2d 1264, 1270 (Ind. Ct. App. 2006) (finding that even if the prior bad acts evidence was offered to show bias rather than character, the trial court did not abuse its discretion in excluding it because the jury was "well aware" of the witness's possible bias), trans. denied. In sum, we conclude that the trial court did not abuse its discretion in excluding evidence of Dilbeck's later relinquishment of her parental rights.

## II.  Double Jeopardy

### A.  Standard of Review

We generally consider the issue of whether multiple convictions violate double jeopardy to be a matter of law for de novo review by appellate courts.  See Spears v. State, 735 N.E.2d 1161, 1166 (Ind. 2000).  The analysis of double jeopardy claims under the Indiana Constitution is governed by Richardson v. State, in which our supreme court held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d 32, 49 (Ind. 1999) (emphasis in original).

Under the actual evidence test, the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. Id. at 53.  The defendant bears the burden of showing a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.  Id.  As long as each conviction requires proof of at least one unique evidentiary fact, no violation of the actual evidence test occurs.  Bald v. State, 766 N.E.2d 1170, 1172 (Ind. 2002).

"Even where no constitutional violation has occurred, multiple convictions may nevertheless violate the 'rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in

Richardson.'" Vandergriff v. State, 812 N.E.2d 1084, 1088 (Ind. Ct. App. 2004) (quoting Pierce v. State, 761 N.E.2d 826, 830 (Ind. 2002)), trans. denied. These rules fall within five categories, which were first enumerated by Justice Sullivan in his concurrence in Richardson:

> 1. Conviction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished. . . .
> 2. Conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished. . . .
> 3. Conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished. . . .
> 4. Conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished. . . .
> 5. Conviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished.

717 N.E.2d at 55-56 (Sullivan, J., concurring).

## B. October 2-3 Counts

### 1. Actual Evidence Test

Schulkers was convicted of aggravated battery, two counts of neglect of a dependent, and battery resulting in serious bodily injury on a child less than fourteen years of age, all Class B felonies, as a result of D.S.'s new injuries that allegedly occurred on or about October 2 and 3, 2011. Schulkers contends that three of these convictions violate the actual evidence test.[1]

---

[1] One neglect of a dependent conviction was based upon Schulkers's failure to seek immediate medical attention for D.S. and Schulkers does not contend that this conviction violates the actual evidence test.

9

Even though Schulkers causing D.S.'s skull fracture, rib fractures, and liver laceration were relied upon to establish that Schulkers knowingly inflicted injury on D.S. (for the aggravated battery), knowingly placed her in a situation that endangered her life or health (for neglect of a dependent), and touched her in a rude, insolent, and/or angry manner (for the battery resulting in serious bodily injury), a comparison of the elements of the offenses establishes that each conviction required proof of at least one additional evidentiary fact. To find Schulkers guilty of aggravated battery, the jury had to find that the injuries created a substantial risk of death.[2] To prove this, the State presented the testimony of Dr. Makoroff in which she stated that D.S.'s head and liver injuries were life-threatening. For neglect of a dependent, the jury had to find that D.S. was a dependent and that Schulkers had the care of D.S.[3] And, finally, for battery resulting in serious bodily injury on a child less than fourteen, the jury had to find that D.S. was less than fourteen and Schulkers was at least eighteen years of age.[4] While the same evidence may have been used to prove both that D.S. was a dependent and under fourteen years of age, additional evidentiary facts were needed to prove that Schulkers had the care of D.S. and that Schulkers was at least eighteen years of age. Vandergriff, 812 N.E.2d at 1087 (holding that convictions for neglect and battery did not violate the actual evidence test

---

[2] Aggravated battery is defined by statute to be committed by "[a] person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death . . . ." Ind. Code § 35-42-2-1.5.

[3] Neglect of a dependent as a Class B felony requires proof that "[a] person having the care of a dependent . . . knowingly or intentionally places the dependent in a situation that endangers the dependent's life or health . . . and results in serious bodily injury." Ind. Code § 35-46-1-4(b).

[4] Battery as a Class B felony requires proof that "[a] person . . . knowingly or intentionally touches another person in a rude, insolent, or angry manner," resulting "in serious bodily injury to a person less than fourteen (14) years of age and is committed by a person at least eighteen (18) years of age." Ind. Code § 35-42-2-1(a)(4).

because additional evidentiary facts were required to prove each offense). Thus, there was no constitutional double jeopardy violation based on the actual evidence test.

## 2. Lesser Included Offense

Schulkers also contends that battery resulting in serious bodily injury is a lesser included offense of aggravated battery. This is an alleged violation of the first of the five categories set forth by Justice Sullivan in his concurrence in Richardson. "A lesser included offense is necessarily included within the greater offense if it is impossible to commit the greater offense without first having committed the lesser." Iddings v. State, 772 N.E.2d 1006, 1016 (Ind. Ct. App. 2002), trans. denied. Contrary to Schulkers's argument, the less serious harm was not the only difference between the aggravated battery and battery convictions. As discussed above, because Schulkers was convicted of battery as a Class B felony, the State was also required to prove that D.S. was less than fourteen years of age and that Schulkers was at least eighteen years of age. See Ind. Code § 35-42-2-1(a)(4). Thus, because it is possible to commit aggravated battery without first committing battery resulting in serious bodily injury on a child less than fourteen, these convictions do not violate this principle of double jeopardy.

## C. Prior to October 2 Counts

Schulkers was convicted of two offenses based on his actions prior to October 2: neglect of a dependent as a Class C felony and battery resulting in bodily injury on a child less than fourteen years of age as a Class D felony. As discussed above, these convictions do not violate the actual evidence test because neglect of a dependent required proof that Schulkers had the care of D.S. and battery resulting in bodily injury

11

on a child less than fourteen required proof that Schulkers was at least eighteen years of age.[5]  However, as the State concedes, these convictions violate double jeopardy principles because they are based on a single rib injury.[6]  This is a violation of another one of the categories set forth by Justice Sullivan in his concurrence in Richardson: "[c]onviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished."  717 N.E.2d at 55 (Sullivan, J., concurring).  Because there was a single rib fracture and there is no evidence that this injury was a result of more than one "act," these convictions violated this common law double jeopardy principle and cannot stand.  Cf. Vandergriff, 812 N.E.2d at 1090 (finding no violation of this common law double jeopardy principle because the State relied upon a grabbing incident as the basis for the neglect conviction and a tossing incident as the basis for the battery conviction).  Because the battery was a Class D felony, it has less severe penal consequences, and we accordingly order it vacated and leave the neglect conviction standing.  See Richardson, 717 N.E.2d at 55.

### III. Continuing Crime Doctrine

Schulkers also contends that his convictions of aggravated battery, two counts of neglect of a dependent, and battery resulting in serious bodily injury on a child less than fourteen, stemming from the same skull fracture, rib fractures, and liver laceration, violate the continuing crime doctrine.  The continuing crime doctrine provides that actions that are sufficient to constitute separate criminal offenses may be so compressed

---

[5] Similar to battery as a Class B felony, battery as a Class D felony required proof that D.S. was less than fourteen and that Schulkers was at least eighteen.  See Ind. Code § 35-42-2-1(a)(2)(B).

[6] Because we conclude that one of the two convictions stemming from Schulkers's conduct prior to October 2 must be vacated, we need not address his argument that these convictions violate the continuing crime doctrine.

in terms of time, place, singleness of purpose, and continuity of action that they constitute a single transaction. Firestone v. State, 838 N.E.2d 468, 471 (Ind. Ct. App. 2005). Although Schulkers frames this issue as an alternate theory for why his convictions violate double jeopardy principles, the purpose of the continuous crime doctrine is not to reconcile the double jeopardy implications of two distinct chargeable crimes but rather to define those instances where a defendant's conduct amounts only to one chargeable crime. Id.

Schulkers analogizes this case to Buchanan v. State, 913 N.E.2d 712 (Ind. Ct. App. 2009), trans. denied. In that case, a panel of this court vacated the defendant's false reporting and intimidation convictions but left his robbery conviction standing based on the continuing crime doctrine because the defendant had phoned in false bomb threats as a diversionary tactic to facilitate his robbery of the bank, during which he used his gun to intimidate bank employees into giving him money. Id. at 720-21. Here, unlike Buchanan, however, the behavior that led to any one of Schulkers's convictions was not necessary to facilitate his remaining actions. After injuring D.S., Schulkers could have immediately sought medical attention for her injuries. Instead, he put her to sleep and told Dilbeck upon arriving home that she was fine; this behavior was the basis for one of his convictions for neglect of a dependent. Moreover, Schulkers did not need to fracture D.S.'s skull in order to fracture her ribs or cause a liver laceration and vice versa. And, finally, while it is unclear how Schulkers injured D.S., the multiple injuries she suffered and the severity of those injuries suggest that his actions were not so compressed in terms of time, place, singleness of purpose, and continuity of action that they constituted a single transaction. See Firestone, 838 N.E.2d at 472 (finding that the defendant's

13

convictions for rape and criminal deviate conduct did not violate the continuing crime doctrine despite the "continuity of the actions" because they were different sexual acts committed at different times).  Schulkers's convictions stemming from D.S.'s new injuries do not violate the continuing crime doctrine.

## Conclusion

The trial court did not abuse its discretion by excluding evidence that Dilbeck relinquished her parental rights to D.S. after the events that led to Schulkers's convictions took place.  And while Schulkers's first four convictions do not violate double jeopardy principles, as the State concedes, the last two of his six convictions do.  Thus, we reverse and remand with instructions for the trial court to vacate Schulkers's conviction and sentence for battery resulting in bodily injury on a child less than fourteen as a Class D felony, but affirm in all other respects.

Affirmed in part, reversed in part, and remanded.

FRIEDLANDER, J., and CRONE, J., concur.

14