**David DRUMMOND, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0406–CR–509.

Court of Appeals of Indiana.

July 26, 2005.

Marshelle Dawkins Broadwell, Marion County Public Defender Agency, Indianapolis, for Appellant.

Steven Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

KIRSCH, Chief Judge.

After two jury trials, David Drummond was convicted of one count of child molesting,[1] as a Class A felony, and one count of child molesting,[2] as a Class C felony. He raises the following dispositive issue on appeal: whether the trial court abused its discretion when it admitted Drummond's tape-recorded statement into evidence.

We reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Drummond was previously convicted of child molesting for an incident relating to his six-month old son. He is currently incarcerated for that crime.

In June of 2002, Drummond's niece, T.G., told a friend's mother that Drummond had touched her in an inappropriate manner. She also told her mother, who contacted the Indianapolis Police Depart-

ment ("IPD"). As part of IPD's investigation, Officer Craig Michael Converse interviewed Drummond in prison. Officer Converse introduced himself to Drummond and indicated that he was interested in the child abuse case involving Drummond's son. During the two-hour unrecorded portion of the interview, Officer Converse attempted to share his experiences and commonalities with Drummond in order to convince him to open up in regards to T.G. Officer Converse did not give Drummond a *Miranda*[3] warning before initiating the conversation.

After approximately two hours, Officer Converse asked Drummond why he might have failed a polygraph test about the incident with his son and if it was possible that he failed it because he was thinking of T.G. Drummond responded that on one occasion, when he was sharing a bed with T.G., his penis may have accidentally touched her. At that point, Officer Converse gave Drummond a *Miranda* warning and recorded the remainder of their conversation, during which Drummond made several statements regarding T.G.

At trial, the State offered the taped portion of the interview into evidence. Drummond moved to suppress citing the United States Supreme Court's recent opinion in *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). The trial court denied Drummond's motion to suppress, and Drummond was subsequently found guilty of molesting his niece, T.G. Drummond now appeals.

## DISCUSSION AND DECISION

The dispositive issue is whether the trial court abused its discretion in de-

---

1. *See* IC 35–42–4–3(a)(1).

2. *See* IC 35–42–4–3(b).

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

nying Drummond's motion to suppress based on *Missouri v. Seibert,* 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). In reviewing a motion to suppress, we do not reweigh the evidence, but determine if there is substantial evidence of probative value to support the trial court's ruling. *State v. Aynes,* 715 N.E.2d 945, 949 (Ind. Ct.App.1999). We look to the totality of the circumstances and consider all uncontroverted evidence together with conflicting evidence that supports the trial court's decision. *Id.*

In *Seibert,* police officers arrested a suspect in an arson/murder investigation and refrained from giving her *Miranda* warnings. After questioning the suspect for 30 to 40 minutes, she finally admitted that the death caused by the arson was not an accident. The suspect was then given a 20–minute break, after which the police officer turned on a tape recorder and gave her a *Miranda* warning. The officer then resumed questioning her in relation to her pre-*Miranda* statement.

The Supreme Court upheld the Missouri Supreme Court's decision that such interrogation techniques constituted an "end run" around *Miranda* and would diminish *Miranda*'s role in protecting the privilege against self-incrimination. *Seibert,* 542 U.S. at ——, 124 S.Ct. at 2607, 159 L.Ed.2d 643 (quoting *State v. Seibert,* 93 S.W.3d 700, 707 (Mo.2002)). In upholding the Missouri Court, the Supreme Court stated:

> Upon hearing warnings only in the aftermath of interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again. A more likely reaction on a suspect's part would be perplexity about the reason for discussing rights at that point, bewilder-

ment being an unpromising frame of mind for knowledgeable decision. What is worse, telling a suspect that "anything you say can and will be used against you," without expressly excepting the statement just given, could lead to an entirely reasonable inference that what he has just said will be used, with subsequent silence being of no avail. Thus, when *Miranda* warnings are inserted in the midst of coordinated and continuing interrogation, they are likely to mislead and "depriv[e] a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Moran v. Burbine,* 475 U.S. 412, 424, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). By the same token, it would ordinarily be unrealistic to treat two spates of integrated and proximately conducted questioning as independent interrogations subject to independent evaluation simply because *Miranda* warnings formally punctuate them in the middle.

*Id.* at 542 U.S. at ——, 124 S.Ct. at 2611, 159 L.Ed.2d 643.

█ Here, Drummond was not given *Miranda* warnings prior to his interview with Officer Converse. He spent two hours discussing the molestation charge arising from his conduct with his son before Officer Converse brought up T.G., which was the real reason he was interrogating Drummond. Officer Converse testified at trial that his intent in speaking to Drummond without the tape recorder was as follows: "The purpose of it was to—to get to know him and to—*my intention was that hopefully he would make some admissions—maybe even a confession as to what he did.*" *Transcript* at 190 (emphasis added). Only after Officer Converse had elicited an incriminating statement from Drummond (i.e., that he may have touched T.G. with his penis while sleeping

in the same bed with her) did he turn on the tape recorder and give Drummond a *Miranda* warning. Drummond then discussed the incidents involving his son and T.G. for another hour or so with Officer Converse, stating at the beginning of the tape that he did not mind talking to Officer Converse, but wished his lawyer were present. *Transcript* at 477.

This two-part interrogation appears to be exactly of the character that the *Seibert* court sought to avoid. We agree that it would be "unrealistic" for us to treat "two spates of integrated and proximately conducted questioning as independent interrogations subject to independent evaluation simply because *Miranda* warnings formally punctuate them in the middle." *Seibert,* 542 U.S. at ——, 124 S.Ct. at 2611, 159 L.Ed.2d 643. It was an abuse of discretion for the trial court to have denied Drummond's motion to strike and allowed his tape-recorded statement to be admitted into evidence.

Reversed and remanded for further proceedings consistent with this opinion.

BAKER, J., and BARNES, J., concur.