Andrew KING, Appellant,

v.

STATE of Indiana, Appellee.

No. 49A02–0504–CR–300.

Court of Appeals of Indiana.

Dec. 30, 2005.

Publication Ordered Feb. 27, 2006.

Joel M. Schumm, Appellate Public Defender, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, for Appellee.

### ORDER

KIRSCH, Chief Judge.

This Court having heretofore handed down its opinion in this appeal on December 30, 2005, marked Memorandum Decision, Not for Publication.

Comes now the Appellant, by counsel, and files herein Motion to Publish, alleging therein that the opinion applies the Supreme Court's recent opinion in *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), which clarifies the impropriety of a "question-first, Mirandize-later" technique.

The Court having examined said Motion, having reviewed its opinion in this case and being duly advised, now finds that the same should be granted.

IT IS THEREFORE ORDERED that the Appellant's Motion to Publish opinion is GRANTED, and this Court's opinion heretofore handed down in this cause on December 30, 2005, marked Memorandum Decision, Not for Publication, is now ordered published.

All Panel Judges Concur.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Andrew King ("King") appeals the trial court's denial of his motion to suppress evidence. We reverse.

### Issue

King raises two issues on interlocutory appeal, which we consolidate and restate as whether the trial court erred by denying his motion to suppress certain self-incriminating statements under the United States Constitution.

### Facts and Procedural History

On July 24, 2004, Agent Michael A. Vergon ("Agent Vergon"), with the Bureau of Alcohol Tobacco Firearms and Explosives, investigated a fire at the Castleview Baptist Church (the "Church") and concluded that it had been intentionally set. At that point, Agent Vergon and other investiga-

tors attempted to "track down any potential leads as to how the fire started." Tr. at 9. During the investigation, Agent Vergon discovered that, on the night of the fire, a Marion County Sheriff's deputy had arrested King in the Church parking lot for public intoxication. At the time of the arrest, King was sleeping in his vehicle, which was parked at the Church. Believing that King may have witnessed the arson, Agent Vergon and another detective interviewed King at the Marion County Jail. "The purpose of the interview was just to talk to [King] and find out what he was doing at the [C]hurch after the fire." *Id.* at 10. The detectives also wanted to know if King had slept in the Church parking lot on other occasions.

During the interview, which was conducted in an interview room on the ground level of the Marion County Jail, King told the detectives about his family background, travels, and work experience. In addition, and in response to the detectives' questioning, King indicated that he was inside the Church at the time of the fire. In particular, King explained that, while he thought it was a dream, he remembers "hopping through a window in the [C]hurch" and seeing a cross on fire. *Id.* at 12.

After learning that King had been inside the Church during the fire, the detectives temporarily stopped the interview, turned on the tape recorder, and read King his *Miranda* rights. The following colloquy between Agent Vergon and King ensued:

[Agent Vergon:] Okay, okay just one step at a time here. You have the right to remain silent. Anything you say can be used as evidence against you in court. You have the right to talk to [a] lawyer for advice before you ask questions, and have him with you during questioning. If you can not afford a lawyer and you want one,

one will be appointed for you by the Court before any questioning. If you decided [sic] to answer questions now without a lawyer present you will still have the right to stop answering at anytime. You have the right to stop answering at anytime until you talk to a lawyer. Do you understand that?

[King:] Yes

[Agent Vergon:] . . . it has to be your decision okay. Um we're doing all we can to help you out, but you know that's something that's strictly your decision. We can't. How about we just keep going a long, and um you can stop. If you think you need a lawyer it's your right, but you've been very cooperative so far.

[King:] Yes a lawyer make sure that I can (inaudible)?

[Agent Vergon:] Yes, Yeah and I'll make sure that you don't.

[King:] (inaudible)

[Agent Vergon:] Well I am looking out for your interest. I am.

[Detective:] We're making sure your rights are protected.

[King:] I just don't know. Cause I whatever I say you said that's [sic] it's gonna [sic] be used against me. And since I'm not really in a very good mental state I shouldn't (inaudible).

State's Ex. A (certain capitalization omitted). Agent Vergon also assured King that he would make sure that King got an attorney and some help.

Further, during the tape-recorded portion of the interview, Agent Vergon summarized what King had disclosed about the events of the fire, prior to his being Mirandized. King responded in the affirmative. Throughout the remainder of the interview, King acted confused, informing the detectives that: (1) he wanted to see a doctor; (2) he was in dream; (3) he was still in New Orleans; and (4) he had been in jail for thirty, as opposed to a couple of, days. After the interview, the detectives obtained a search warrant for King's vehicle.

On July 30, 2004, the State charged King with two counts of arson, one as a Class A felony and the other as a Class B felony.[1] On November 30, 2004, King filed a motion to suppress "any and all oral and written communications, confessions, statements, admissions, or tests, alleged to have been made by [King] prior to, at the time of, or subsequent to his arrest in this cause." Appellant's App. at 33. On February 22, 2005, after conducting a hearing, the trial court denied King's motion to suppress. In so doing, the trial court determined that, because the officers did not consider King a suspect at the time of the initial, un-Mirandized, interrogation, he was not in custody. The trial court also concluded that King voluntarily waived his *Miranda* rights and that Detective Vergon was not deceitful when he promised King a doctor and counsel after the interview. At King's request, the trial court certified the order for interlocutory appeal, and we accepted jurisdiction pursuant to Indiana Appellate Rule 14(B) on May 16, 2005.

**Discussion and Decision**

*I. Standard of Review*

On appeal, King argues that the trial court erred by denying his motion to suppress. We review the denial of a motion to suppress evidence in a manner similar to allegations of insufficient evidence. *McIntosh v. State,* 829 N.E.2d 531, 536 (Ind.Ct.App.2005), *reh'g denied.* We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Faust v. State,* 804

1. Ind.Code § 35–43–1–1.

N.E.2d 1242, 1244 (Ind.Ct.App.2004), *trans. denied.* However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, when reviewing a denial of a motion to suppress, we also consider the uncontested evidence most favorable to the defendant. *Id.*

## II. Analysis

King challenges the trial court's denial of his motion to suppress on two separate grounds. First, he contends that any statements made prior to the *Miranda* warning, which were unrecorded, should have been suppressed because they resulted from a custodial interrogation in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In this vein, the State counters that King was not "in custody" at the time of the pre-*Miranda* statements and, therefore, the protections of *Miranda* could not be invoked. Second, King argues that any statements made after receiving the *Miranda* warning, i.e., the recorded statements, should have been suppressed because they were not knowingly and voluntarily made. We separately address these contentions.

### A. Pre–Miranda Statements

■ The Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that no person shall be compelled in any criminal case to be a witness against himself. U.S. CONST. amend. V; *see also Grubb v. State,* 734 N.E.2d 589, 591 (Ind.Ct.App.2000), *trans. denied.* To protect the privilege against self-incrimination, in *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602, the United States Supreme Court held that a person who has been "taken into custody or otherwise deprived of his [or her] freedom of action in

any significant way" must, before being subjected to interrogation by law enforcement officers, be advised of his or her rights to remain silent, to have an attorney present, and to be warned that any statement the person makes may be used as evidence against him or her. Statements elicited in violation of this rule are generally inadmissible in a criminal trial. *Id.* The law enforcement officer's duty to give *Miranda* warnings, however, does not attach unless a defendant has been subjected to custodial interrogation. *Hurt v. State,* 694 N.E.2d 1212, 1217 (Ind.Ct.App.1998), *trans. denied, cert. denied,* 525 U.S. 1008, 119 S.Ct. 525, 142 L.Ed.2d 435 (1998).

■ Here, the parties do not contest that King was interrogated during the interview and, thus, our analysis will focus on whether King was "in custody" during such interrogation. To be in custody for purposes of *Miranda,* the defendant need not be placed under formal arrest. *Thompson v. State,* 692 N.E.2d 474, 476 (Ind.Ct.App.1998). Rather, the custody determination turns upon whether the individual's freedom has been deprived in a significant way or if a reasonable person in the person's circumstances would believe that he or she is not free to leave. *Id.* As such, the determination involves an examination of all the objective circumstances surrounding the interrogation. *Gibson v. State,* 733 N.E.2d 945, 953 (Ind.Ct.App. 2000).

■ Further, an officer's knowledge and beliefs are only relevant to the question of custody if conveyed—through either words or actions—to the individual being questioned. *Loving v. State,* 647 N.E.2d 1123, 1125 (Ind.1995). Similarly, a police officer's " 'unarticulated plan has no bearing on the question' " of custody. *Id.* (quoting *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). The test is how a reasonable per-

son in the suspect's shoes would understand the situation. *Berkemer*, 468 U.S. at 442, 104 S.Ct. 3138.

■ In the present case, the State contends that King was not in custody at the time of the interview because "he was not initially a suspect in the investigation and [King] was not in a situation where he would feel compelled to talk." Appellant's App. at 3. However, the fact that Agent Vergon considered King merely a witness—not a suspect—is irrelevant to our evaluation of whether he was in custody, as the record does not reflect that he ever communicated such a belief to the defendant. Rather, the circumstances surrounding the interview may have conveyed the opposite message. Because of King's incarceration on an unrelated offense, for example, the questioning took place in an interview room on the ground level of the Marion County Jail.[2] What is more, the record does not indicate that the two interviewers—i.e., police detectives—ever told King that he was free to leave the interview room. In light of the totality of these circumstances, we conclude that a reasonable person in King's position would not have believed himself to be free to leave but would, instead, have considered his freedom of movement to have been restrained. Accordingly, for purposes of *Mi-*

*randa,* King was in custody at the time that the detectives questioned him. Because King was subjected to a custodial interrogation without the benefit of the *Miranda* warning, the pre-*Miranda* statements are inadmissible and should be suppressed. As such, the trial court erroneously denied King's motion to suppress the pre-*Miranda* disclosures.

### B. Post–Miranda Statements

■ King also challenges the admissibility of the subsequent post-*Miranda* statements that he made during the interview. Specifically, King maintains that these statements—which were basically affirmative responses to Agent Vergon's synopsis of the pre-*Miranda* statements—were not knowingly or voluntarily made because the detectives: (1) employed a "question-first, Mirandize-later approach to the interrogation;" (2) failed to clarify King's ambiguous request, despite knowing that King was in a confused mental state; and (3) deceived him by misrepresenting their role in the interrogation process.[3] Appellant's Br. at 8. Concluding that King's first claim of error is dispositive, we confine our discussion to whether the detectives' use of the "question-first, Mirandize-later" technique was proper or in violation of King's *Miranda* rights.

---

**2.** Relying upon *Mathis v. United States*, 391 U.S. 1, 4–5, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1969), King argues that he was in custody merely because he was incarcerated at the time of the interview. The State counters that King's interpretation of *Mathis* is too restrictive. Instead, the State contends that *Mathis* should not be construed as a *per se* rule requiring *Miranda* warnings before any investigative questioning of a prison inmate. Appellee's Br. at 5 (citing *United States v. Menzer*, 29 F.3d 1223, 1230–33 (7th Cir.1994), *cert. denied*, 513 U.S. 1002, 115 S.Ct. 515, 130 L.Ed.2d 422 (1994)). In the case at bar, we do not resolve this dispute because, regardless of whether we apply a *per se* rule approach to *Mathis* or a less narrow "totality of the cir-

cumstances" approach, the result is the same—King was in custody at the time of the questioning at issue.

**3.** King also argues that his post-*Miranda* statements are inadmissible because Agent Vergon failed to secure his written *Miranda* waiver. However, a written or oral waiver is not required to establish a valid waiver. *Carter v. State*, 730 N.E.2d 155, 157 (Ind.2000). That said, waiver may not be presumed from a defendant's silence or a confession. *N.C. v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). Thus, to determine whether King's waiver was valid, we look to the totality of the circumstances.

To support his contention that the post-*Miranda* statements were not knowingly and voluntarily made, King relies upon the United States Supreme Court's holding in *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). There, the Court disapproved of an interrogation technique in which police officers purposefully withhold *Miranda* warnings until after an interrogation is had and a confession obtained, and thereafter, give *Miranda* warnings and secure a waiver before obtaining a second similar confession. *Id.* at 611–14, 124 S.Ct. 2601. In *Seibert*, police officers interrogated a murder suspect for thirty to forty minutes until she finally admitted that the death caused by the arson was not accidental. *Id.* at 604–05, 124 S.Ct. 2601. The suspect was then given a twenty-minute break, after which the police officer turned on a tape recorder and gave her a *Miranda* warning. The officer then resumed questioning the suspect in relation to her pre-*Miranda* statement. *Id.*

In determining that this second statement was inadmissible, the Supreme Court observed:

> Upon hearing warnings only in the aftermath of interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again. A more likely reaction on a suspect's part would be perplexity about the reason for discussing rights at that point, bewilderment being an unpromising frame of mind for knowledgeable decision. What is worse, telling a suspect that "anything you say can and will be used against you," without expressly excepting the statement just given, could lead to an entirely reasonable inference that what he has just said will be used, with subsequent silence being of no avail. Thus,

> when *Miranda* warnings are inserted in the midst of coordinated and continuing interrogation, they are likely to mislead and "depriv[e] a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." By the same token, it would ordinarily be unrealistic to treat two spates of integrated and proximately conducted questioning as independent interrogations subject to independent evaluation simply because *Miranda* warnings formally punctuate them in the middle.

*Id.* at 613–14, 124 S.Ct. 2601 (internal citations omitted).

Following *Seibert*, in *Drummond v. State*, 831 N.E.2d 781, 783–84 (Ind.Ct.App. 2005), another panel of this Court recently determined that a defendant's statement was inadmissible because police officers interrogated the defendant for two hours without the benefit of *Miranda*, and only gave the *Miranda* warning after the suspect had made an incriminating statement. There, the officer's intention, during the interrogation, was to get the defendant to make "some admissions—maybe even a confession as to what he did." *Id.* at 783. The *Drummond* Court concluded that this "two-part interrogation appears to be exactly of the character that the *Seibert* [C]ourt sought to avoid." *Id.* at 784.

Similarly, in the case at bar, King was not given *Miranda* warnings prior to his interview with Agent Vergon and the other detective. Instead, he only received such warnings after he was subjected to a custodial interrogation and had made some incriminating statements. Only after Agent Vergon had elicited the incriminating statements from King did he turn on the tape recorder and give King a *Miranda* warning. Agent Vergon then repeated the pre-Miranda disclosures, to

which King responded in the affirmative. This two-part interrogation appears to be exactly of the character that the *Seibert* and Drummond courts sought to avoid. Therefore, the trial court erred by refusing to suppress the post-*Miranda* disclosures.

For the foregoing reasons, we reverse the trial court's denial of King's motion to suppress.

Reversed.

BAKER, J., and NAJAM, J., concur.