**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 30 2012, 9:50 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**JAMES W. MCNEW**
**JON A. KEYES**
Allen Wellman McNew
Greenfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DANIELLE KELLY,                                )
                                               )
    Appellant-Defendant,                  )
                                               )
        vs.                          )    No. 30A01-1112-CR-584
                                               )
STATE OF INDIANA,                              )
                                               )
    Appellee-Plaintiff.                   )

APPEAL FROM THE HANCOCK CIRCUIT COURT
The Honorable Richard D. Culver, Judge
Cause No. 30C01-1009-FA-209

**August 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

Danielle Kelly was charged with dealing in cocaine and possession of cocaine within 1,000 feet of a public park or youth program center, both Class A felonies, following a search of a vehicle in which Kelly was a passenger. Kelly brings this interlocutory appeal of the trial court's denial of her motion to suppress, raising the following issues for our review: 1) whether the search of the vehicle violated the Fourth Amendment to the United States Constitution; 2) whether the search violated Article 1, Section 11 of the Indiana Constitution; and 3) whether incriminating statements Kelly made to police officers should be suppressed. Concluding the search and seizure did not violate either the federal or state constitutions and Kelly's post-Miranda statements are admissible, we affirm the trial court's denial of her motion to suppress.

## Facts and Procedural History

On September 15, 2010, Sergeant Michael Fuller with the Fortville Police Department responded to a call from Carolyn Goodwin who was known to Sergeant Fuller because she had previously been the victim of a crime. Although she had on occasion contacted police to report various crimes, she had never been used as a confidential informant by police. Sergeant Fuller went to Goodwin's home where she told him that, "to help clean up her community," transcript at 10, she had arranged for an Indianapolis dealer who had sold cocaine to her friends in and around Fortville to bring cocaine to her house, but that she was afraid of what would happen when he arrived and she had no money to purchase the cocaine. She feared he might have a weapon. She expected the dealer, who she described only as an African American man, to arrive within fifteen minutes. While Sergeant Fuller was at Goodwin's home, she received

2

several phone calls. From overhearing Goodwin's part of the conversations, it was apparent to Sergeant Fuller that the male caller was seeking directions to her house. Sergeant Fuller requested assistance from officers in his department. A vehicle arrived at Goodwin's home within the approximate time frame Goodwin had stated the dealer was expected. Police met the vehicle, driven by an African American man and carrying a passenger, with their guns drawn. Both the driver and Kelly, the passenger, were immediately ordered out of the vehicle and handcuffed. The vehicle was Kelly's; the driver was her cousin. While they were being interviewed, officers conducted an inventory search of the vehicle prior to impounding it. During the inventory search, they discovered cocaine in a hollowed-out screwdriver. During the police interview of Kelly, she was asked if she knew about the cocaine in the car and admitted that she did. After she made this statement, Kelly was advised of her <u>Miranda</u> rights. She subsequently repeated her admission that she was aware of the cocaine.

The State charged Kelly with dealing in cocaine within one thousand feet of a public park or youth program center and possession of cocaine in an amount greater than three grams within one thousand feet of a public park or youth program center, both Class A felonies. Kelly filed a motion to suppress evidence of the cocaine found in the search of the vehicle as well as her incriminating statements, alleging both were obtained in violation of the state and federal constitutions. Following a hearing and supplemental briefing, the trial court entered the following order:

> This matter was submitted to the Court on the issue of the Defendant's Motion to Suppress Evidence. And the Court, after being duly advised in the premises, finds that said Motion should be granted in part and denied in part. The Court denies the [D]efendant's Motion to Suppress Evidence with exception of statements by Danielle Kelly after she was

3

> handcuffed and prior to the Miranda warnings. Subsequent statements, after being Mirandized, are not suppressed.

Appellant's Appendix at 72. Kelly sought and was granted certification of the trial court's order, and this court accepted jurisdiction of her interlocutory appeal.

## Discussion and Decision

### I. Standard of Review

We review the denial of a motion to suppress "in a manner similar to other sufficiency matters. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the ruling. Unlike typical sufficiency reviews, however, we will consider not only the evidence favorable to the ruling but also the uncontested evidence favorable to the defendant." Gunn v. State, 956 N.E.2d 136, 138 (Ind. Ct. App. 2011). We review de novo a ruling on the constitutionality of a search or seizure, but we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. Campos v. State, 885 N.E.2d 590, 596 (Ind. 2008).

### II. Search and Seizure

### A. Fourth Amendment

### 1. Probable Cause

Kelly first contends the trial court erred in denying her motion to suppress because the warrantless seizure of herself and her vehicle violated the Fourth Amendment to the United States Constitution. The Fourth Amendment provides in relevant part, "The right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated[.]" A lawful search generally requires a judicially-issued search warrant. Wilson v. State, 966 N.E.2d 1259, 1263 (Ind. Ct. App.

4

2012), <u>trans. denied</u>. Warrantless searches are per se unreasonable, and the State therefore bears the burden of establishing that a warrantless search falls within one of the recognized exceptions to the warrant requirement. <u>Id.</u>

There are three levels of police investigation, two of which implicate the Fourth Amendment. An arrest or detention for more than a short period must be justified by probable cause. <u>Overstreet v. State</u>, 724 N.E.2d 661, 663 (Ind. Ct. App. 2000), <u>trans. denied</u>. Probable cause to arrest exists where the facts and circumstances within the knowledge of the officers are sufficient to warrant a belief by a person of reasonable caution that an offense has been committed and that the person to be arrested has committed it. <u>Id.</u> (citing <u>Brinegar v. United States</u>, 338 U.S. 160, 175-76 (1949)). Second, it is well-settled Fourth Amendment jurisprudence that police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion that criminal activity "may be afoot." <u>Id.</u> (quoting <u>Terry v. Ohio</u>, 392 U.S. 1, 27 (1968)). Accordingly, limited investigatory stops and seizures on the street involving a brief question or two and a possible frisk for weapons can be justified by mere reasonable suspicion. <u>Id.</u> When a law enforcement officer makes a casual and brief inquiry of a citizen which involves neither an arrest nor a stop, the Fourth Amendment is not implicated. <u>Id.</u>

Here, Kelly was ordered out of the car by officers with guns drawn and immediately handcuffed when the vehicle in which she was a passenger arrived at Goodwin's house. <u>See</u> Tr. at 19 (Chief Kiphart testifying, after being asked what steps he took after the car pulled up, "we had weapons out ordered them out of the vehicle. . . .

5

[O]nce we secured them . . . I started . . . speaking with Ms. Kelly."). This was not a "casual or brief inquiry," nor was it a "limited investigatory stop[] . . . involving a brief question or two." Kelly was seized when her freedom of movement was restrained by a show of authority immediately upon her arrival. Woodson v. State, 966 N.E.2d 135, 139 (Ind. Ct. App. 2012), trans. denied. Therefore, her detention and the ensuing search must be supported by probable cause and authorized by one of the recognized exceptions to the warrant requirement.

The pertinent inquiry regarding probable cause is whether the facts and circumstances at the time of the arrest would lead a reasonably prudent person to believe the suspect is committing or had committed a crime. Conwell v. State, 714 N.E.2d 764, 766-67 (Ind. Ct. App. 1999). The action here was precipitated by Goodwin's call to police. In Pawloski v. State, 269 Ind. 350, 380 N.E.2d 1230 (1978), our supreme court considered whether probable cause for an arrest existed on the basis of a tip to police. The court first noted that an informant's reliability must be established before a finding of probable cause can be made. Id. at 353, 380 N.E.2d at 1232. There are two categories of informants: professional informants or anonymous tipsters and concerned or cooperative citizens. Id. at 354, 380 N.E.2d at 1232. The reliability of professional informants or anonymous tipsters "must be established by reference to underlying facts and circumstances which indicate that the information is trustworthy . . . because information of this type may be unreliable or self-serving . . . ." Id. When a citizen volunteers information to the police, there may be more reason to believe that the information is reliable because informants who come forward voluntarily are ordinarily motivated by good citizenship or a genuine effort to aid law enforcement officers in solving a crime.

<u>Id.</u> The court noted that "[s]ome jurisdictions have therefore held that informants of this type are to be considered reliable for the purpose of determining probable cause unless incriminating circumstances exist which cast suspicion upon the informant's reliability." <u>Id.</u> at 354, 380 N.E.2d at 1232-33. Even information volunteered by a citizen requires some corroboration, however. <u>Id.</u> at 355, 380 N.E.2d at 1233. The information in <u>Pawloski</u> was given to police in person by an acquaintance of the defendant to whom the defendant had confessed setting fire to an apartment. The court held the police had sufficient probable cause to order the defendant's arrest because the tipster testified he felt compelled to come forward with information to assist the police "even though it acted to incriminate and betray the confidence of a friend [and] there were no circumstances which would have placed [his] reliability . . . in question." <u>Id.</u>

In <u>Kellems v. State</u>, 842 N.E.2d 352 (Ind. 2006), however, the court determined <u>Pawloski</u> "goes a bit too far." <u>Id.</u> at 356. Although continuing to believe there may be greater indicia of reliability in a concerned citizen's report to police versus a report by a professional informant, "this goes only to reasonable suspicion, not, as the prior cases suggest, probable cause." <u>Id.</u> Police received a telephone call from a woman who identified herself and reported seeing the defendant, who had no license or insurance, driving intoxicated and with children in his vehicle. She described the vehicle and provided the license plate number. An officer spotted a vehicle matching the description, confirmed the license plate information, and initiated a traffic stop without observing any traffic violations. The officer requested the defendant's driver's license, but the defendant had only an identification card because he was an habitual traffic offender and his license was suspended. A portable breath test was negative. The defendant was

charged with operating a vehicle while an habitual traffic offender. He moved to suppress evidence gathered during the traffic stop, arguing the tip was insufficient to provide police with reasonable suspicion. His motion was denied and he was found guilty as charged.

On appeal, our supreme court affirmed "[b]ecause a tip from an identified informant or concerned citizen coupled with some corroborative police investigation is sufficient to create reasonable suspicion for an investigative stop . . . ." Id. at 353. Specifically, the court pointed out the caller identified herself by name and birthdate and the officer who conducted the stop knew her and where and with whom she lived, so that she could be identified and held criminally responsible if she had knowingly given police a false report. Id. at 356. The court also noted that the caller offered sufficient information to allow police to corroborate her assertions: the description of the vehicle and the direction in which it was traveling, the license plate number, the name of the driver, and that there were children in the car, all of which the police were able to confirm prior to or immediately upon conducting the investigatory stop. Id. Finally, the court noted that the caller met the requirements for being classified as a concerned or cooperative citizen because the record did not suggest incriminating circumstances that would indicate her motive in calling was anything other than to assist police. Id. at 357.

As a "concerned citizen," Goodwin called the Fortville Police Department and reported that a man would arrive at her house in approximately fifteen minutes to sell her cocaine. Because she had arranged the deal herself, she had personal knowledge of the transaction she was reporting. Sergeant Fuller knew Goodwin because she was a prior crime victim, and he had no reason to believe that she was not telling the truth. Sergeant

8

Fuller went to Goodwin's house, thereby meeting her face-to-face and not relying on self-identification over the phone to verify her identity as the tipster. Goodwin indicated she knew of the dealer because "he had been selling cocaine to several of her friends . . . and she was tired of seeing it and . . . she had gotten [his] phone number from another . . . user that he was selling to." Tr. at 11. While at Goodwin's house, Goodwin received three or four phone calls from which it was clear Goodwin was giving someone directions to her house. A car arrived at Goodwin's house within the time frame she had indicated she was anticipating the dealer and Goodwin advised Sergeant Fuller that "he's here." Id. Sergeant Fuller acknowledged Goodwin did not give him a name or description of the dealer or a description of the car, and that she was known to drink alcohol daily, although he did not "remember her being intoxicated" during his contact with her. Tr. at 14.

The information Goodwin provided was not as specific as that provided by the tipster in Kellems, given that Goodwin provided only a bare minimum description of the dealer as African American and did not describe the vehicle at all, but Sergeant Fuller actually met with Goodwin as opposed to merely taking a report over the phone as in Kellems. In a face-to-face encounter, "a trained officer has the opportunity to assess credibility and motive by observing facial expressions and subtle body language." State v. Glass, 769 N.E.2d 639, 643 (Ind. Ct. App. 2002), trans. denied. Goodwin received several phone calls in Sergeant Fuller's presence, and from what he could hear of the conversation, it was clear that the male caller was seeking directions to her house. A vehicle arrived at Goodwin's house within the time frame she said the dealer was expected, and Sergeant Fuller was able to gauge her reaction to its arrival. Moreover,

9

Goodwin was not merely susceptible to prosecution for false reporting, she was susceptible to prosecution for involvement in a drug deal by calling police. Under the totality of the circumstances, we conclude there was probable cause to support the seizure.

2. Warrantless Vehicle Search

To dispense with procuring a search warrant, the State must demonstrate both probable cause and an exception to the warrant requirement. The "automobile exception" to the warrant requirement is applicable "when a vehicle is readily mobile and there is probable cause to believe it contains contraband or evidence of a crime." Meister v. State, 933 N.E.2d 875, 878-79 (Ind. 2010) (citing Maryland v. Dyson, 527 U.S. 465, 467 (1999)). When there is probable cause that a vehicle contains evidence of a crime, a warrantless search of the vehicle does not violate the Fourth Amendment because exigent circumstances exist arising out of the likely disappearance of the vehicle. Id. at 879 (citing California v. Acevedo, 500 U.S. 565, 569 (1991)). In Myers v. State, 839 N.E.2d 1146 (Ind. 2005), our supreme court held that the automobile exception to the warrant requirement "does not require any additional consideration of the likelihood, under the circumstances, of the vehicle being driven away." Id. at 1152. Rather, "the 'ready mobility' requirement of the automobile exception . . . mean[s] that all operational, or potentially operational, motor vehicles are inherently mobile . . . ." Id.

There is no dispute that the vehicle was operational; officers observed the vehicle pull into the parking area at Goodwin's home. The vehicle was therefore readily mobile for purposes of the automobile exception and no separate exigent circumstances had to be shown. Having already determined that probable cause existed, the warrantless search of

the vehicle was authorized by its ready mobility. See Meister, 933 N.E.2d at 880 (noting the dearth of exigent circumstances where the driver was secured by police and there was no threat of imminent destruction of evidence inside the vehicle because it was in police control, but holding probable cause and ready mobility justified warrantless search). The Fourth Amendment does not prohibit the search and the trial court did not clearly err in denying Kelly's motion to suppress evidence found in the warrantless search of the vehicle.

## B. Article 1, Section 11

Kelly also contends the warrantless search and seizure was in violation of Article 1, Section 11 of the Indiana Constitution. Like the Fourth Amendment, Section 11 affords individuals protection from unreasonable searches and seizures. Although the text of the two provisions is virtually identical, we interpret and apply Section 11 independently. McLain v. State, 963 N.E.2d 662, 668 (Ind. Ct. App. 2012), trans. denied.

> The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. The totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure. Although there may be other relevant considerations under the circumstances, the reasonableness of a search or seizure turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.

Cochran v. State, 843 N.E.2d 980, 985 (Ind. Ct. App. 2006) (citations and quotation marks omitted), trans. denied.

The degree of concern, suspicion, or knowledge that a violation has occurred was high in this case, as we have already determined above that probable cause existed that

11

drugs were being transported for sale. The degree of intrusion was, as Kelly contends, great, as police ordered her out of the vehicle with their guns drawn and she was immediately handcuffed. The extent of law enforcement needs, contrary to Kelly's assertions, however, was also great. Kelly asserts that because it was apparent the dealer did not know how to get to Goodwin's home, Sergeant Fuller could have sought a warrant or further investigated her claims instead of letting Goodwin direct him to her house. That course of action, however, would have created the risk of the dealer becoming frustrated or suspicious and going home or going elsewhere to sell the drugs. Moreover, the fact that there is another, or possibly better, course of action for conducting the investigation does not mean that the course of action police undertook is unlawful. There was probable cause that a person in possession of drugs was imminently expected at Goodwin's home, and the totality of the circumstances indicates the police action was reasonable. The trial court did not clearly err in denying Kelly's motion to suppress on this basis.

### III. Incriminating Statements

Finally, Kelly contends her statements to officers after being seized acknowledging she knew there were drugs in the car should be suppressed because the officers violated the Fifth Amendment to the United States Constitution and Article 1, Section 14 of the Indiana Constitution.

The Fifth Amendment provides that no person shall be compelled to be a witness against himself in a criminal case. To protect the privilege against self-incrimination, a person who is subject to custodial interrogation must be advised of her rights to remain silent and to have an attorney present, and be warned that any statement she makes may

be used as evidence against her. Miranda v. Arizona, 384 U.S. 436, 444 (1966) ("[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."). As stated above, Kelly was immediately removed from the vehicle and handcuffed upon arriving at Goodwin's home. Therefore, Kelly was in custody and subject to custodial interrogation. See Kelley v. State, 825 N.E.2d 420, 427 (Ind. Ct. App. 2005) ("Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way.") (quotation and citation omitted). Chief Kiphart began questioning Kelly without advising her of her rights and elicited incriminating statements. Within minutes thereafter, Chief Kiphart did advise Kelly of her rights, after which she made further incriminating statements. The trial court found that her initial statements should be suppressed, but that the statements she made after the advisement would be allowed. Kelly contends all of her statements should be suppressed.

In Missouri v. Seibert, 542 U.S. 600 (2004), the Supreme Court disapproved of an interrogation technique in which law enforcement officers purposefully do not give Miranda warnings until after an interrogation is underway and a confession procured, and then give Miranda warnings and secure a waiver of rights before obtaining a second confession. Id. at 611-14. In that case, the defendant was questioned for thirty or forty minutes about a fire-related death, with the officer "follow[ing] instructions . . . that he refrain from giving Miranda warnings" before the interrogation. Id. at 604. During this interrogation, the defendant admitted the fire was not accidental. After a twenty-minute

13

break, the defendant was given Miranda warnings and questioned further in relation to her earlier admission. The Court observed that "when Miranda warnings are inserted in the midst of coordinated and continuing interrogation, they are likely to mislead and depriv[e] a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." Id. at 613-14 (quotation omitted, alteration in original). In doing so, the Court contrasted the deliberate nature of the Miranda omission in this case with the facts of Oregon v. Elstad, 470 U.S. 298 (1985). In Elstad, officers went to a young suspect's home to take him into custody, and while one officer spoke briefly with the suspect's mother, the other told the suspect he "felt" he was involved in a burglary, and the suspect acknowledged he had been at the scene. Id. at 301. The suspect was then taken to the police station, where he was given Miranda warnings before an interrogation during which the suspect made a full confession. The Court held the second statement was admissible and voluntary, calling the officer's initial failure an "oversight" and noting the incident had "none of the earmarks of coercion." Id. at 315-16.

The facts of this case are more akin to Elstad than Seibert. Chief Kiphart questioned Kelly for only two or three minutes before giving her Miranda warnings. There is no indication that Chief Kiphart purposefully withheld Miranda warnings as part of an intentional "question first" technique to obtain a confession. The cases cited by Kelly in support of suppressing her post-Miranda statements involve lengthy initial interrogations. See Morris v. State, 871 N.E.2d 1011 (Ind. Ct. App. 2007) (defendant interviewed repeatedly at police station over a period of at least four hours prior to Miranda warnings), trans. denied; Payne v. State, 854 N.E.2d 7 (Ind. Ct. App. 2006)

14

(defendant questioned for seven hours without <u>Miranda</u> warnings); <u>Drummond v. State</u>, 831 N.E.2d 781 (Ind. Ct. App. 2005) (defendant interrogated for two hours before <u>Miranda</u> warnings were given).  Here, the entire questioning at the scene lasted less than half an hour.  The initial questioning lasted but a few minutes before Kelly was given a <u>Miranda</u> advisement.  Under these circumstances, we hold <u>Seibert</u> does not mandate the suppression of Kelly's post-<u>Miranda</u> statements, and the trial court did not clearly err in denying her motion to suppress as to those statements.

Conclusion

Neither the Fourth Amendment nor Article 1, Section 11 prohibit the warrantless search and seizure of Kelly and her vehicle, and the trial court did not err in denying her motion to suppress evidence discovered as a result.  Kelly's post-<u>Miranda</u> statements are admissible and the trial court did not err in denying her motion to suppress as to those statements.  The trial court's order is affirmed, and this case is remanded for further proceedings.

Affirmed.

BAILEY, J., and MATHIAS, J., concur.