Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 30 2013, 7:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TRUONG VU, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 53A04-1207-CR-352 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Mary Ellen Diekhoff, Judge
Cause No. 53C05-0901-FB-12

**July 30, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Truong Vu appeals his convictions for criminal deviate conduct, as a Class B felony; sexual battery, as a Class D felony; and two counts of criminal confinement, as Class D felonies, as well as his sentence. Vu raises six issues for our review, which we restate as follows:

1.  Whether the trial court abused its discretion when it admitted into evidence statements Vu made to police officers.

2.  Whether the trial court erred when it denied Vu's motion for severance of the offenses.

3.  Whether Vu invited any error when the trial court granted his request to have a friend act as an interpreter during trial.

4.  Whether the State presented sufficient evidence to support two of Vu's convictions.

5.  Whether Vu's convictions for criminal confinement violate double jeopardy.

6.  Whether the trial court's written sentencing order is inconsistent with its oral sentencing order.

We affirm and remand.

## FACTS AND PROCEDURAL HISTORY

During the evening of December 18, 2008, P.T. went to the Pink Nails Salon in Bloomington for a manicure in preparation for her twenty-first birthday party. P.T. mentioned her birthday to the manicurist, and the manicurist spoke to Vu, the owner of the salon. Following P.T.'s manicure, Vu offered to give P.T. a free pedicure. P.T. agreed, but because it was close to closing time Vu closed the salon and the other employees left. Vu then forced P.T. onto an eyebrow waxing table in a back room and

2

forced his fingers into P.T.'s anus and vagina. P.T. tried to escape, but Vu blocked the exit. Vu let P.T. leave after she gave him her cell phone number.

On December 26, 2008, C.M. went to the Pink Nails Salon with a friend near the salon's closing time. C.M. requested an eyebrow waxing, and Vu escorted her into the back of the store. After waxing her eyebrows, Vu began rubbing C.M.'s arms. C.M. protested and attempted to leave, but Vu ordered her to lie on her stomach, and C.M. did not feel free to leave. Vu then began rubbing C.M.'s legs and buttocks, he pulled down C.M.'s pants and underwear, and he struck her bare buttocks. Vu then grabbed C.M.'s breasts. C.M. tried to escape, but Vu blocked the exit. Vu let C.M. leave after he kissed her on the neck.

On December 30, P.T. reported her encounter with Vu to local police. C.M. reported her encounter on December 31. That same day, detectives approached Vu at his salon and escorted him to a nearby police station. There, Detective Rick Crussen read Vu his <u>Miranda</u> rights and explained them as follows:

> Q    . . . You have the right to remain silent. <u>Anything you say can be used against you in court.</u> You have the right to talk to a lawyer for advice before answering questions and have them with you during questioning. If you can't afford a lawyer, one will be appointed for you before any questioning, if you wish. If you decide to answer questions now without a lawyer present you still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer. Do you understand all of those?
>
> A    Not very much.
>
> Q    Okay. You don't have to talk to me. Do you understand that?
>
> A    Uh huh.

Q     Okay.  <u>If you do talk to me, anything you tell me can be used in court later.  Do you understand that?</u>

A     <u>Uh huh.</u>

Q     Okay.  You have the right to have a lawyer here.

A     Uh huh.

Q     If you can't afford one, the State will provide one for you.  They'll pay for an attorney for you to be here if you would rather have one here without talking to me.

A     Okay.

Q     So even if you can't afford one, you still don't have to talk to me about having a lawyer.  They'll provide you one.  Okay.  If you decide to answer questions now, and talk to me now, you still have the right to stop answering at any time.  You can tell me at any time in our conversation I'm done talking to you, I want my lawyer or I'd like to go or whatever.  Do you understand that part?

A     Yeah.

State's Exh. 5 at 2-3 (emphases added).  Vu then explained his version of the events involving P.T. and C.M. to Detective Crussen and another officer and denied any criminal acts.  Vu also explained that he had been in Bloomington for four or five months, and he had previously had a salon in Bedford.  Vu gave the officers a detailed explanation of the location of his salon in Bedford, explained that he had had that salon for about three years, and stated that he had been in the United States for the last thirteen or fourteen years.

On January 6, 2009, the State charged Vu with criminal deviate conduct, as a Class B felony; sexual battery, as a Class D felony; and two counts of criminal confinement, as Class D felonies.  Vu filed a motion for severance of the offenses against

4

P.T. from the offenses against C.M., which the trial court denied. During his trial, at Vu's request the court permitted him to have a friend sit at the defense table as a translator for Vu. The jury found Vu guilty as charged, and the court entered its judgment of conviction accordingly. The court then sentenced Vu to an aggregate term of eleven and one-half years, with four years of that term suspended to probation. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Whether Vu Waived his Miranda Rights

On appeal, Vu first asserts that the trial court abused its discretion when it admitted his statements to Detective Crussen. In particular, Vu asserts that he did not knowingly and voluntarily waive his Miranda rights and that Detective Crussen's advisement of Vu's rights was "incomplete and defective." Appellant's Br. at 19.

We have held that, when an accused is subjected to custodial interrogation, the State may not use statements stemming from the interrogation unless it demonstrates the use of procedural safeguards effective to secure the accused's privilege against self-incrimination. Payne v. State, 854 N.E.2d 7, 13 (Ind. Ct. App. 2006). The Miranda warnings apply only to custodial interrogation because they are meant to overcome the inherently coercive and police dominated atmosphere of custodial interrogation. Id. To be in custody for purposes of Miranda, the defendant need not be placed under formal arrest. King v. State, 844 N.E.2d 92, 96 (Ind. Ct. App. 2005). Rather, the custody determination turns upon whether the individual's freedom has been deprived in a

5

significant way or if a reasonable person in his position would believe he is not free to leave.[1] Id.

A waiver of one's Miranda rights occurs when the defendant, after being advised of those rights and acknowledging that he understands them, proceeds to make a statement without taking advantage of those rights. Johnson v. State, 829 N.E.2d 44, 50 (Ind. Ct. App. 2005) (citing Ringo v. State, 736 N.E.2d 1209, 1211-12 (Ind. 2000)), trans. denied. For a statement to be admissible, the State must show that a defendant's waiver was knowing and voluntary. Id. (citing Deckard v. State, 670 N.E.2d 1, 6 (Ind. 1996)). To determine whether a valid waiver was made, courts look to the totality of the circumstances. Id.

On appeal, Vu asserts that he did not knowingly and voluntarily waive his Miranda rights because English is not his first language. But the totality of the circumstances shows that Vu understands English. He has lived in the United States for more than thirteen years. He operated a business in Bedford for three years. He gave the interrogating officers a clear description of the location of his business in Bedford. He operated a business in Bloomington for more than four months before the instant offenses. Both the Bedford and the Bloomington businesses were open to the public. An employee of Vu's testified that she had known him for seven years and she only spoke English with him. And when advised of each of his Miranda rights, Vu acknowledged that he understood them and proceeded to engage the officers in a discussion of the

---

[1] In light of these principles, we do not consider the State's alternative argument on appeal that Vu was not in custody when he was interrogated at the police station by the officers.

alleged events.  In light of the totality of the circumstances, we agree with the trial court that Vu knowingly and voluntarily waived his <u>Miranda</u> rights.

Vu also asserts on appeal that the officers did not properly advise him of his <u>Miranda</u> rights.[2]  In particular, Vu complains that Detective Crussen said only that "anything you tell me <u>can</u> be used in court later," State's Exh. 5 at 3 (emphasis added), not that he told Vu that anything Vu stated "can and will" be used against him, Appellant's Br. at 20.  But the Indiana Supreme Court has expressly rejected this argument, stating that "we do not see the omission of the word 'will' to be such a fatal variance as to require suppression of the statements."  <u>Myers v. State</u>, 510 N.E.2d 1360, 1365 (Ind. 1987).  <u>Myers</u> is binding authority on these facts.  Thus, we affirm the trial court's admission of Vu's recorded statements.

**Issue Two:  Motion for Severance**

Vu next asserts that the trial court erred when it denied his motion for severance of the offenses related to P.T. from the offenses related to C.M.  Specifically, Vu argues that he was entitled to a severance as a matter of right, and that even if he had no right to sever, the trial court abused its discretion in refusing a severance.  Indiana Code Section 35-34-1-11(a) provides defendants with the right to severance where "two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character . . . ."  As the statute explicitly states, severance is required as a matter of right under this provision only if the sole

---

[2]  In his reply brief, Vu asserts that "[t]he State does not respond to [this] claim . . . ."  Reply Br. at 1-2.  Vu is incorrect.  <u>See</u> Appellee's Br. at 15.

7

ground for joining is that the offenses are of the same or similar character. Craig v. State, 730 N.E.2d 1262, 1265 (Ind. 2000). However, offenses may be sufficiently "connected together" to justify joinder under Indiana Code Section 35-34-1-9(a)(2) "if the State can establish that a common modus operandi linked the crimes and that the same motive induced that criminal behavior." Id. (quotation omitted). "Modus operandi refers to a pattern of criminal behavior so distinctive that separate crimes are recognizable as the handiwork of the same wrongdoer." Id. at 1265 n.1 (quotation omitted).

In Craig, our supreme court held that the defendant's molestation of two children demonstrated the same modus operandi. In particular, the court held:

> Each victim was a member of the Brownie troop led by Craig and his wife and was spending the night at Craig's house. The incidents occurred within the same week. Craig asked each girl to take the "taste test" and covered the eyes of each with tape. He then put an object in their mouths and instructed them to suck on it. These similarities are sufficient to establish that the molestation of each victim was the handiwork of the same person. The motive of both offenses was the same—to satisfy Craig's sexual desires.

Id. at 1265.

Similarly, Vu's offenses against P.T. and C.M. demonstrate the same modus operandi. P.T. and C.M. have similar physical characteristics—they are both petite, young, and with dark hair—and they each visited Vu's salon near closing time and within eight days of each other. Both victims were assaulted in a back room, during a massage, and away from the main customer lobby. And for each victim, Vu was able to block the exit when the victim attempted to escape. These similarities are sufficient to establish that Vu's assault of each victim was the handiwork of the same person. Further, the

8

motive of each of the offenses was the same: to satisfy Vu's sexual desires. Accordingly, Vu was not entitled to severance as a matter of right.

If severance is not a matter of right, Indiana Code Section 35-34-1-11(a) provides that:

> the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:
> (1) the number of offenses charged;
> (2) the complexity of the evidence to be offered; and
> (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

A trial court's refusal to sever charges under these circumstances is reviewed for an abuse of discretion. Id.

Vu's case involved only four charges against two victims and, as in Craig, a total of nine witnesses. Moreover, Vu acknowledges that "the evidence was not unduly complex." Appellant's Br. at 27. A jury would have no difficulty distinguishing the evidence and applying the law intelligently to each count. See Craig, 730 N.E.2d at 1265. Thus, the trial court did not abuse its discretion when it denied Vu's motion for severance.

**Issue Three: Interpreter**

Vu next contends that the trial court committed fundamental error when it permitted Ye Lee, a friend of Vu's, to serve as an interpreter for Vu during the trial. The trial court held a conference on Vu's request for an interpreter. According to the trial

9

court's summary of its conference with Vu's counsel, John-Paul Isom, and the prosecutor:

> Mr. Isom stated during the conference[] that Mr. Vu had not had any difficulties understanding the proceedings during the hearings that had been held in the matter, nor had Mr. Isom had any difficulty communicating with Mr. Vu regarding the case.
>
> Mr. Isom agreed with the court that Mr. Vu would be responsible for the cost of an interpreter for the purpose of sitting at defense counsel table to assist Mr. Vu in the event Mr. Vu had any questions during the trial.
>
> Discussion was also had regarding the availability of an interpreter who spoke Vietnamese. The use of the professional interpreter service was discussed by the parties. Mr. Isom indicated that he did not want to use the telephonic interpreter service as he did not believe it was necessary. And, again, he wanted another person at the counsel table to be able to assist Mr. Vu privately.
>
> Mr. Isom requested that a friend of Mr. Vu be allowed to sit at defense counsel table to assist Mr. Vu. The friend spoke Vietnamese and was available to sit through the jury trial. He was not a certified interpreter. The [S]tate did not object to the request and the court stated it would allow the friend to sit at defense table for the purpose of conferring with Mr. Vu privately. The court also stated if the services of a certified interpreter became necessary during the jury trial, the telephone interpreter service would be utilized.

Appellant's App. at 284-85.

Thus, the court declined to use the telephone interpreter service and instead permitted Lee to serve as an interpreter at Vu's request. As such, if there was any error in allowing Lee to participate as an interpreter, that error was at Vu's invitation and it is not subject to appellate review. A party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct. Reinhart v. Reinhart, 938 N.E.2d 788, 792 (Ind. Ct. App. 2010).

Neither is any error here fundamental. "A fundamental error is a substantial, blatant violation of basic principles of due process rendering the trial unfair to the

10

defendant." Taylor v. State, 717 N.E.2d 90, 93 (Ind. 1999). Here, Vu's defense counsel expressly informed the court that Vu had no trouble understanding the proceedings or communicating with his attorney. Accordingly, there is no blatant error.

### Issue Four: Sufficiency of the Evidence

Vu also asserts that the State failed to present sufficient evidence to support his convictions for sexual battery and criminal confinement of C.M. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the verdict and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id.

In order to prove sexual battery, as a Class D felony, the State was required to show that Vu, with the intent to arouse or satisfy his or C.M.'s sexual desires, touched C.M. when she was compelled to submit to the touching by force or the imminent threat of force. I.C. § 35-42-4-8(a)(1). "Force" may be actual or implied and is determined from the victim's point of view. See Chatham v. State, 845 N.E.2d 203, 206-07 (Ind. Ct. App. 2006). And to prove criminal confinement, as a Class D felony, the State was required to show that Vu knowingly or intentionally confined C.M. without her consent. I.C. § 35-42-3-3(a)(1). To "confine" means to substantially interfere with the liberty of another. I.C. § 35-42-3-1.

Vu asserts that the State failed to prove sexual battery because it did not show that he used force against C.M. or that he touched C.M. with the intent to arouse his sexual desires. Vu also asserts that the State failed to prove criminal confinement because it did not show that C.M. did not consent to the confinement. We cannot agree.

The State presented ample evidence to prove that Vu committed sexual battery, as a Class D felony, against C.M. C.M. testified that Vu touched her on multiple parts of her body, including her arm, legs, buttocks, and breasts; that Vu forcibly removed C.M.'s pants and exposed her bare buttocks; and that Vu struck C.M.'s bare buttocks. Moreover, it was entirely reasonable for the jury to infer that Vu's behavior was motivated by his intent to satisfy his sexual desires. Vu's arguments to the contrary on appeal are without merit.

The State also presented clear evidence that Vu confined C.M. without her consent. C.M. testified that, after Vu assaulted her, she tried to leave but Vu blocked her path. As such, Vu's argument here fails.

### Issue Five: Double Jeopardy

Vu next contends the actual evidence the State used to show he committed criminal confinement against P.T. and C.M. is the same evidence the State used to show that he committed criminal deviate conduct against P.T. and sexual battery against C.M. Under Indiana's Double Jeopardy Clause, Article I, Section 14 of the Indiana Constitution, two offenses are the same offense if, with respect to the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Richardson v. State, 717 N.E.2d 32, 49

12

(Ind. 1999). Under the actual evidence test, we examine the actual evidence presented at trial to determine whether each challenged offense was established by separate and distinct facts. Moore v. State, 882 N.E.2d 788, 794 (Ind. Ct. App. 2008). To prove a violation, a defendant must show "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." Id. (quoting Smith v. State, 872 N.E.2d 169, 176 (Ind. Ct. App. 2007), trans. denied). Double jeopardy is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. Id.

As an initial matter, Vu asserts that the trial court "improperly imposed convictions and sentences . . . after determining they 'merged' . . . ." Appellant's Br. at 42. Vu further asserts that "[t]he State is barred from challenging . . . the trial court's 'merger'" under the doctrine of invited error. Id. at 46-47. Vu's assertions here are perplexing. The State did not invite any error; the record is clear that the State never asked the court to vacate or "merge" Vu's criminal confinement convictions for double jeopardy purposes. See Transcript at 652. And neither did the trial court find that Vu's criminal confinement convictions violated Indiana's Double Jeopardy Clause. To the contrary, the record is clear that when the trial court used the word "merger" it meant that the sentences for his two convictions against C.M. would run concurrently, as would the sentences for his two convictions against P.T., while his total sentence against C.M. and

13

his total sentence against P.T. would run consecutive to each other. See id. at 657. We will not disregard the plain intent of the trial court.

Neither do Vu's convictions for criminal confinement against either P.T. or C.M. violate the actual evidence test. Against P.T., Vu committed criminal deviate conduct and then, once that act was completed, confined her by blocking her attempt to exit the room. Likewise, against C.M., Vu committed sexual battery and then, once that act was completed, Vu confined C.M. by blocking her attempt to exit. As such, the State presented separate and distinct facts to establish the essential elements of the challenged convictions.

### Issue Six: Sentencing Statement

Finally, Vu notes, and the State agrees, that the trial court's written sentencing statement fails to properly reflect Vu's term of probation. According to the trial court's oral sentencing statement, the court sentenced Vu to an aggregate term of eleven and one-half years, with four years of that term suspended to probation. Id. at 655-56. But this is not properly reflected in the court's written statement. Accordingly, we remand with instructions for the court to correct its written sentencing statement and any related documents to include the term of probation.

Affirmed and remanded.

BAILEY, J., and BARNES, J., concur.

14